## James E. McBride v. The Common Council of Grand Rapids.

*Constitutional law: Mandamus: Jurisdiction of circuit courts.* The section of the constitution of this state defining the jurisdiction of the circuit courts (*Art. VI., § 8*), which, after conferring upon them "original jurisdiction in all matters, civil and criminal," not expressly excepted, or prohibited by law, and "appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same," provides that "they shall also have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and other writs necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions," is held not to give those courts the power to issue the writ of *mandamus* generally, or in all cases to which it is applicable, but only when "necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals," etc.— GRAVES, CH. J., dissenting.

*Heard April 21. Decided October 6.*

Error to Kent Circuit.

*Hughes, O'Brien & Smiley,* for plaintiff in error.

*W. Wisner Taylor* and *H. E. Thompson,* for defendants in error.

COOLEY, J:

This case comes before us on writ of error to the circuit court for the county of Kent. The proceeding in the

court below was an application for a *mandamus* to compel the respondents to issue a warrant in payment of a salary claimed to be owing to him by the applicant.    The circuit court denied the writ, and is understood to have done so on the ground of want of authority.

The authority, if there be any in the circuit courts, comes from the constitution.    By *Section eight of Article six* of that instrument it is provided that "the circuit courts shall have original jurisdiction in all matters, civil and criminal, not excepted in this constitution, and not prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same.    They shall also have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and other writs necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions."    If this section gives the power to the circuit courts to award the writ in all cases to which it is applicable, then it might have been awarded in this instance; but if not, then the circuit judge was right in his conclusion.

The argument on one side is, that the section does not undertake or purport to confer the power to issue the enumerated writs generally, but only to issue them when "necessary to carry into effect their orders, judgments and decrees, and to give them a general control over inferior courts and tribunals within their respective jurisdictions." This argument is supported by what seems to be the most obvious meaning of the section; a meaning that should control unless difficulties of construction arise which must lead to the conclusion that the most obvious meaning was not the one intended.

The difficulty which was suggested on the argument is, that some of the enumerated writs are not adapted to carrying into effect the orders, judgments and decrees of the circuit courts, and to giving them control over inferior courts

and tribunals; and consequently the restrictive words of the section must be confined in their application to the "other writs" which the circuit courts are empowered to issue. In other words, that the meaning of the section is, that the circuit courts shall have general power to issue the writs of *habeas corpus*, *mandamus*, injunction, *quo warranto* and *certiorari*, and they shall also have power to issue such other writs as may be necessary to give effect to their general jurisdiction.

This argument renders it necessary to consider how far these several enumerated writs are essential to the jurisdiction which it is conceded is conferred upon the circuit courts by the constitution. That jurisdiction is a general "original jurisdiction in all matters civil and criminal," with a few exceptions, and appellate and supervisory jurisdiction over the inferior courts. It is not contended that the writs of injunction and *certiorari* are not appropriate and necessary to this general jurisdiction. Indeed, without them, or some process devised by legislation to take their place, this general jurisdiction could not be exercised. But it is said that the writ of *quo warranto* finds no necessary employment in the exercise of this general jurisdiction, and consequently the grant of power to issue it is futile unless it is to have some further office.

The enumeration of the writ of *quo warranto* in this section is somewhat remarkable, as the writ itself long since passed out of use, and it is not at all probable that the constitutional convention designed to restore it. If, as was undoubtedly the case, an information in the nature of a writ of *quo warranto* was intended, instead of the writ itself, then it is by no means apparent that it is not a proper process in the exercise of the ordinary jurisdiction of the circuit courts.

This information is adapted for the cases of intrusions and usurpations of office and the unlawful exercise of franchises. It is the ordinary proceeding in which all questions of this nature are disposed of. Public rights and private

MCBRIDE v. THE COMMON COUNCIL OF GRAND RAPIDS.

rights are concluded by the trials which are had upon it; and whether considered as a "civil" or a "criminal" "matter," the cases which are disposed of by means of it are among the most important which are known in the law. Now there is no express exception of those cases from the jurisdiction conferred upon the circuit courts in such general terms, and I can conceive of no sufficient reason for a suggestion that those general terms do not embrace them.

So far as the writ of *habeas corpus* is concerned, it is undoubtedly necessary in many cases to employ it as an auxiliary writ in both civil and criminal cases. But I think authority over the cases in which this writ is called for is also granted in the general grant of jurisdiction over all matters civil and criminal. It cannot be contended for a moment that those general words do not give jurisdiction over many of the cases which are adjudicated on this writ. All cases, for instance, where civil rights are involved; cases of the custody of children and other dependent persons, and the like. But then the adjudications in other cases are equally final as regards the particular matter determined; made so by the express terms of the statute, which was in force when the constitution was adopted.—*Comp. L.*, § *7033*. And I think without any enumeration of writs whatever, we should have no difficulty in holding that authority over this writ of *habeas corpus* was a part of the general jurisdiction of the circuit courts. It has belonged to the jurisdiction of those courts ever since they have been in existence in the state; and we can hardly understand why it was mentioned here at all, unless it was to preclude the legislature from depriving the court of this portion of its former authority. But we may say the same of the mention of the writs of injunction and *certiorari*. No one will pretend that the general grant of jurisdiction in all matters civil and criminal is enlarged by the mention of these writs as process the circuit courts may issue.

As regards the writ of *mandamus* the case is quite differ-

.cut. It is a very proper writ to enable the circuit courts to give effect to their appellate and supervisory authority in some cases, and is often made use of for such purposes.— See *Layton v. State*, 28 *N. J.*, 575, 577. But beyond that it has no necessary office in the scope of circuit court powers. The writ is not a judicial, but a prerogative writ.— *3 Bl. Com.*, 110. It was so defined by *Lord Mansfield*, who spoke of it as a prerogative writ flowing from the king himself, sitting in the Court of King's Bench, superintending the police, and preserving the peace of the country.— *The King v. Barker*, 1 *Wm. Black.*, 352. Formerly no issue could be made upon the return to it, but if the return made sufficient answer to the application the proceeding must stop there, and the party injured by its falsity was put to his action on the case for damages.—*3 Bl. Com.*, 111. The statute *9 Anne* made provision for a traverse in some cases, but it was not until that of *1 Wm. IV.*, *c. 21*, that the right to take issue on the return was given generally. Even after that statute a writ of error did not lie to review the final determination of the Court of Kings Bench.—*Rex v. Dean & Chapter of Dublin*, *Strange*, 536; *same case in error*, 2 *Bro. Par. Cas.*, 554. The writ of error was given by *Stat. 6 and 7 Vic.*, *c.*, 67; *3 Broom & Hadley's Com.*, 458. The difficulties in the way of a review in the customary method are pointed out in the New Jersey case to which reference has already been made. "The nature and design in the proceeding, in its original institution, precluded the idea of a review by writ of error. It was not in the nature of a civil suit between parties to settle private rights. The award of the *mandamus* does not purport to adjudge or decide any right. It is rather in the nature of an award of execution than of a judgment. It is the mode of *compelling* the performance of acknowledged duty, or *enforcing* an existing right, rather than deciding what that right or duty is. The award is no finality. It concludes nothing. If the writ is denied, the relator

cannot have error, and if granted, the award could not be pleaded in bar. Like a *procedendo,* or a prohibition, it was a simple command to perform a duty. The award of a *mandamus* to an inferior court, to proceed to judgment, to issue an execution, to restore an appeal,—to a public officer, to perform a specified duty,—is not founded on a judicial determination of any right. There is no judgment, or order in the nature of a judgment, from which error can lie. The use of the writ has been extended to cases which involve more directly private right; but even in such case at common law there was no judicial determination of the right on the proceeding on *mandamus.*"—*Layton v. State, 28 N. J., 575, 576.* All the authorities speak of the writ as discretionary, and both *Mr. Selwyn* in his *Nisi Prius* (*7 Am. Ed., 1078*) and *Mr. Chitty* in his *General Practice* (*Vol. 1, 791*), assign as a reason why the power to issue it ought to be exercised with great caution, that a writ of error does not lie on this proceeding.—See also *High on Extraordinary Remedies, § 536, and cases cited.*

The clause in the constitution giving this jurisdiction to the circuit courts must be construed in connection with the preceding section,—*Art. VI., § 3,*—which gives to this court a general superintending control over all inferior courts. How is this superintending control to be exercised in cases of *mandamus* if the circuit courts possess the general authority? The constitution gives the authority to the circuit courts, and neither makes provision for a review, nor enjoins it upon the legislature to do so. If it had enjoined legislation in the premises, the injunction, from the nature of the case, could not have been compulsory. Thus, the intent of the constitution, that this court should have a general superintending control of inferior courts, would in this regard be counteracted and controlled by an intent that the circuit courts should possess this general authority with no method of review; a conflict of purpose not to be lightly imputed in the case of an instrument presumably drawn with care, as a constitution is.

It is to be borne in mind also, that the jurisdiction claimed for the circuit courts would be one co-ordinate with that of this court, and from its very nature might be exercised by the circuit courts while this court had the very same subject matter under consideration. The proceeding in one court could not be pleaded in abatement, or in bar, to that in the other in such discretionary matters, and nothing but the refusal of a judge to exercise his authority over the writ could preclude most unseemly as well as vexatious proceedings in some cases if parties should see fit to resort to them. These are circumstances entitled to no little weight when we are seeking the meaning of a somewhat blind provision of the constitution, as this must be conceded to be.

There is another consideration which in my mind has considerable importance. The principal occasions for the issue of the writ are to enforce some public or private right by the action of one of the circuit courts or of a state officer. The circuit courts could not, of course, issue this writ to each other; consequently all such cases must be conceded to be beyond the reach of this provision. But, so far as the state officers are concerned, if authority to issue the writ to them is given, it is conferred, not upon the circuit courts generally, but upon a single circuit court; because their offices are within a single circuit. Thus the authority, as it applies to this most important class of cases, is not a general authority, but an authority that by force of circumstances is special, and gives to one circuit judge a large authority in executive and administrative matters, which no other judge can exercise. Is it probable that this was intended? And, to go further, is it probable that the convention ever intended that the executive heads of departments should be subject to control in their duties by the circuit courts? I cannot bring my mind to that conclusion.

It has always been a principle in this country that the several departments of the government should, as much as possible, be protected against interference, except so far as

was necessary to make each a peaceful and salutary check upon the others. But wherever one is given any control over another, it has always been thought proper and respectful that such control should come from the highest authority and not from any other. A power to remove a judge, for instance, would not be conferred upon a head of a department, but it would be lodged with the governor, as the chief executive, or with the legislature. The same would be true in the case of such executive officers as may be controlled in their duties by judicial process. Unless the court of last resort is overburdened with business,—as the supreme court certainly was not when our constitution was framed,—it is hardly to be supposed that a system would be devised under which the heads of departments, in the performance of duties often of the very highest importance, and demanding promptness and expedition, should be subject to the discretionary interference of two courts, with all the annoyances, vexations and delays that must be certain in many cases to result, especially as one was not a court of last resort, and its decision denying the writ would bind no one, but might be disregarded by the parties, and a new proceeding instituted for the same purpose in the higher court. It would be thought more respectful to those officers, and at the same time less vexatious, and less likely to prove detrimental to the public service, if all such matters were to go at once to the court of last resort. The legislature has acted upon an idea like this in the legislation regarding proceedings in the nature of a *quo warranto*; for, while it recognizes in the circuit courts a general jurisdiction in the case of informations, it expressly excepts from their authority the cases of informations against the state officers.—*Comp. L.*, § *7101.*

These considerations lead me to the conclusion that the constitution does not give to the circuit courts jurisdiction of the enumerated writs, except for the purposes of the jurisdiction which in general terms is conferred; and that the writ of *mandamus* has a very limited application within that jurisdiction, not extending to the present case. The

conclusion is that the circuit court was right in denying the writ.

It has been deemed desirable to give an opinion on the jurisdictional question, because, although the circuit courts have not, so far as I know, been in the practice of issuing the writ of *mandamus*, yet, with the confident assertion in some quarters that they may do so, the question is certain to keep coming up until it is decided. It was once before brought to our attention by a refusal of a circuit judge to issue the writ, but as it was not necessary to decide it then, the question was passed without notice.

The proceedings in this court should be dismissed, with costs.

CAMPBELL and MARSTON, JJ., concurred.

GRAVES, CH. J:

My brothers have very properly, in my opinion, proceeded to pass upon the constitutional question which was argued at the hearing; but as they have reached a result in which I am unable to concur, I find it necessary to state my reasons for a different conclusion.

There are many observations in the opinion my brothers have given which appear to me open to satisfactory replication, but in setting forth my own notions I shall avoid any counter argument, and confine myself to that line of reasoning which has directed my judgment to a conclusion adverse to that of my brothers.

I may add that if my opinion on the leading point was acceptable to the court, I might still find insuperable difficulties against any review on writ of error in this case in consequence of the mode of proceeding adopted in the court below.—*Dikeman v. Brooklyn, 13 Wend., 130; Ex parte Fitzgerald, 23 Wend., 648.*

The main question upon the merits is, whether the constitution allows *mandamus* to be used by the circuit courts except when necessary to execute the power of supervisory

control over inferior tribunals, and also when actually required to effect the ends of jurisdiction in cases brought under cognizance by other means.    Up to this time the supreme court has not been asked to consider this question, though one of the learned counsel had the impression that it was tacitly passed on in a recent case against the regents of the university.    But the proceeding which the counsel unquestionably had in mind was one which originated in this court and which therefore could not have involved the point.

The first step in an examination of the question presented is an inspection of the constitutional provision on which the power of the circuit courts, whatever it may be, necessarily rests.

It is the eighth section of the sixth article, and reads as follows:  "The circuit courts shall have original jurisdiction in all matters, civil and criminal, not excepted in this constitution, and not prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same.    They shall also have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and other writs necessary to carry into effect their orders, judgments and decrees and give them a general control over inferior courts and tribunals within their respective jurisdictions."

The plaintiff's counsel claim that the power here given to employ *mandamus* is not merely auxiliary, but one which empowers the circuit court to have original jurisdiction by means of the writ itself.    They argue that the language fairly examined carries this meaning and is incapable of being satisfied by any construction which treats the writ as a mere supplementary, assistant or incidental remedy.    That the terms conferring general jurisdiction are of themselves ample to authorize the writ when needed as a help in cases which in other ways are already under cognizance, and hence that no separate specific grant was called for to entitle the court to use it as an aid in such cases.

That the restrictive passage having the words, "necessary

32 MICH.—47.

to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and tribunals within their respective jurisdictions," cannot be allowed to limit the scope of the antecedent passage which specifies the writs of "*habeas corpus, mandamus*, injunction, *quo warranto, certiorari*," without doing manifest violence to sense, and imputing grave absurdity to the constitution. That to escape such consequences and arrive at sound practical results, it becomes inevitable to consider the particular paragraph which names the writs as meant to confer positive original power, and going beyond any mere incidental right naturally accessory to the authority given by the general grant; and then next to regard the paragraph containing the qualifying terms as designed to guard against the idea or inference that other writs besides those expressly named should not be used in case it should be found essential to employ them in the execution of the powers to adjudge, order and decree, and to control inferior courts and tribunals within the jurisdiction.

On the other hand, the defendant's counsel claim that the constitution gives no authority whatever to the circuit courts to use *mandamus* except as a proceeding necessary to work out the jurisdiction to supervise and control inferior courts and tribunals, and the jurisdiction to dispose of cases not instituted by the writ; that this is the plain sense of the words, and is in harmony with the antecedent policy of the state in regard to the distribution of judicial power; that each one of the specifically enumerated proceedings is capable of being used in aid and furtherance of matters falling under one or the other of these heads, and hence that by this construction every part of the section may be made to operate without incongruity or impropriety.

The argument from the former policy of the state lacks cogency, because, instead of finding a continuity of design in regard to the general arrangement of judicial power, it is very evident that the original scheme was widely departed from when the old constitution was superseded. In point

of fact the perplexities of the present question, if not the question itself, would seem to be owing to the alterations then made and authorized.

Many changes of a radical nature were introduced by the present constitution, and those concerning the organization of the judicial department and the distribution of judicial power were not among the least.

It is true the court of ultimate resort was naturally left without material change in point of jurisdiction.

As the tribunal of final authority it was indispensable to vest it in the main with the same powers which it possessed before, because it could not otherwise be the supreme court. But the tribunals subordinate to it were not spared. The convention considered that something approaching a new system was needed and was practicable, and proceeded accordingly. An independent court of chancery was in substance precluded, and the office of master was prohibited. The legislature was required to abolish, as far as practicable, all distinctions between proceedings of law and equity, and the circuit courts were ordained as the only ones of general original jurisdiction.

In many particulars the change was extensive and complete. A survey of the whole subject will make it evident that the position advanced by the defense cannot be strengthened by any thing in our antecedent constitutional and legislative history.

When we come to the constitutional provision itself, we certainly encounter difficulties. And I do not see how they can be avoided by going into extrinsic matters.

The question to be settled grows out of the ingredients and structure of the provision, and a decision of it cannot be had without obtaining a construction of the provision. The terms and arrangements must be attended to, and those terms must be so construed, if possible, as to give to each some operation, and that operation must be such as the nature of the particular proceeding will admit.

It is believed the proposition cannot be controverted, that

if the qualifying passage was intended to apply to any one of the enumerated writs, it was intended to apply to all, and if intended not to apply to some particular writ, it was intended not to apply to any.

This was virtually, if not in terms, conceded on the argument.

Which was the intention, must be ascertained after considering the compatibility of the writs with the requirement of the qualifying clause.    On reading the section it will be observed that the writs designated are all grouped together under one head of power, and that the clause contains no distinction between the right to award one and the right to award another, except the tacit distinction that the function of the writ must accord with the exigency.    For example, it is not specified that injunction and *mandamus* may be used merely as auxiliary proceedings, or as proceedings to control other tribunals and no otherwise, whilst *habeas corpus* and *quo warranto* may be used generally, and without limitation, in all cases regularly cognizable by such proceedings.

There is, then, no other inequality in the power over these writs according to the frame of this clause, than such as proceeds from the inherent difference of function of the writs themselves.    Hence there is no such distinction as exists between original and auxiliary use of process, or between the use of process to control inferior tribunals and the use of it for other purposes; and the right as granted or described in this part of the section does not purport to be regulated by any such criterion.

All these writs, then, or none, must be governed by the qualifying provision, and if any one or more cannot be so governed, then it must be concluded that it was intended none of them should be.    This brings us to the direct question, whether it was intended that each of these writs should be controlled by the qualifying passage; and in proceeding to obtain an answer we must first see of what nature the writs required by this passage must be.

The words are: "and other writs necessary to carry into

effect their orders, judgments and decrees, and give them a general control over inferior courts and tribunals within their respective jurisdictions."

It is obvious that to satisfy the design and object, and therefore the intention of the framers of this provision, the writs called for must in their nature and function be fit and proper, either to carry into effect orders and decrees within the province of the circuit courts, or to give these courts general control over inferior ones within their districts. The necessary sense of the language forbids its application to writs which are inapt for the purposes specified.

We are certainly bound to suppose the convention were not guilty of the absurdity of contemplating the use of writs for an end or in a mode which the frame and inherent nature and legal history of the writ could not possibly admit.

Such being the case, we may recur to the preceding clause containing the enumeration of writs, and ascertain whether all of such writs meet the requirements of the qualifying clause just quoted, and if they do then the writs of *habeas corpus* and *quo warranto* are included. Does the writ of *habeas corpus* answer to the requirements of this clause? If it does, then, as the right to award it depends upon the two clauses in in question, such right being alone expressly given in this part of the section, it follows that by force of the constitution itself this writ of liberty which has been cherished for generations with so much ardor, and which the convention even considered so indispensable that they inserted a section to expressly guard it *(Art. 4, § 44)* is only permitted to issue out of the circuit court as a means to control inferior courts, or to help out some proceeding based on independent grounds.

Can it be safely advanced that whilst the convention were so anxious to preserve and defend the privilege of this writ in all its plenitude that they embodied in the constitution a particular and distinct provision that the legislature should not suspend it, except when in case of rebellion or invasion the public safety should require it, they at the same time

most plainly lead the way for its practical suspension in many instances most important, by disallowing the writ in the sole court of general original jurisdiction permitted to be established?

It will at once occur to every mind that to circumscribe the use of the writ to the ends specified in the qualifying provision would despoil it of more than half its value. It would preclude it inevitably in a great variety of cases of the most vehement urgency.

Take cases where the custody of children is in question, and the innumerable cases of different kinds where persons are restrained of their liberty without process or color of process.

That the convention, in expressly guarding the privilege, intended to guard the means, cannot be doubted, because without the means the "privilege" would be a misnomer, an absurdity. Neither can it be doubted but that in guarding the "privilege" generally, all kinds of cases falling within the spirit of the privilege, all kinds of cases within the reason for *habeas corpus*, were contemplated; and not merely a part, and those not likely to be the most serious, or to be such as to appeal most clearly and directly to the abstract necessity for such remedy. It is certainly not reasonable to suppose the authors of the constitution were apprehensive that the court might prove unequal to the task of dealing with *habeas corpus* as an original remedy; neither could they have felt that the liberty of the citizen would be less dear in cases where an original and independent proceeding would be required.

If the court could not be trusted, the judges out of court could not. The reason for curtailing the power of the former must have greater force in regard to the latter, and the reduction of jurisdiction applied to the courts would be extended to the judges. The judicial power to award the writ would hence be taken away to a great extent, and in many instances of the greatest urgency, from the identical

judicial force of general original authority impliedly recognized. by the constitution .itself as most able and most worthy of trust.

This recognition is found in the fact that the circuit courts are ordained to be the sole courts of general original jurisdiction, and are by the constitution invested with all the high powers proper to such courts in cases civil and criminal.

Is it credible, in view of all the circumstances, that the convention, without making any provision to meet the exception, designed to except from the jurisdiction of the circuit courts all power to award *habeas corpus* on occasions not comprehended by the qualifying clause in section eight?

Upon this subject it is not improper to refer to the policy of our laws. From the ordinance of 1787 down, the general course has always been to favor the privilege of *habeas corpus* and facilitate the remedy. The clear and strong tendency has been to multiply the jurisdictions, not to reduce them. Finally, we have the uninterrupted practical construction of the provision of the constitution from its adoption to this time. All have considered the circuit courts as invested under this section with full original jurisdiction in *habeas corpus.*

I am therefore of opinion that the constitution is not open to the charge of having at one and the same time ordained the inviolable sanctity of the privilege of the writ without exception, and then in substance and effect of having despoiled the privilege of all practical value in a great variety of the most meritorious cases. As a consequence of this view, it follows that the qualifying clause of section eight cannot be held as operating to restrict the use of *habeas corpus,* as claimed.

It seems to me that this consideration by itself is adequate to prove that the clause containing the enumeration of writs cannot be controlled and limited by what I have called the qualifying clause; but the argument in favor of allowing the latter a restrictive operation upon the former

encounters what is generally considered a more obvious and certain obstacle in the very nature and function of another proceeding in the category of writs, namely, *quo warranto*.

Can it be said that at the time of the convention this proceeding had ever been thought capable of use to help out a case of an independent nature, or had ever been deemed possibly fit to be used judicially to control inferior tribunals? No instance of the kind has been pointed out.

In referring to it by name the convention contemplated its specific character and office, and intended its normal application.

To impute a purpose to allow the writ in cases foreign to its end and opposed to its aptitude, would amount to a charge of absurdity. Now, in the nature of things, it is not possible to employ the proceeding as a mere auxiliary to others, or as an instrument to control tribunals. Its end, its principle, its frame and mode of operation, repel the idea. In its essence and function it is an original remedy, and one, too, distinctly and absolutely inappropriate to be used by a superior court to control an inferior one. But counsel for defendants urge that it may be employed in the circuit courts against judges of probate, justices of the peace, county officers, corporations, and the like. All this may be true, but it does not aid the argument in the least. When so used it is not as an instrument in the hands of the circuit court, either to work out a case otherwise begun, or to control an inferior tribunal. It is not laid hold of by the court as something subservient to a separate remedy, or as an instrument to preserve the subordination of inferior courts, or hold them to their duty. It is still a definite original proceeding, devised and framed to discharge certain functions and attain specific and peculiar ends. Its purpose is, by direct and original judicial cognizance to bring into question the right to hold the office, or the right to exercise or retain a franchise. It does not assume to revise or control official acts, or acts colorably official, where the title is not the

question at issue; neither does it attempt to deal with a body claiming or assuming corporate right where the validity of the claim or assumption is not the subject for judgment.

It contemplates a direct investigation of the right and title to act at all, and of the right to use or hold some franchise, and it is a misapplication of terms to confound such a proceeding with one to control inferior courts, or aid a jurisdiction obtained by other process.

These considerations prove that between two of the enumerated proceedings and the requirement of the passage alleged to apply to all the enumerated proceedings there is an inherent and practical incompatibility; and by the nature of the case, and from the necessity of the position of defendants, this amounts to proof that the clause itself containing the enumeration is not restrained by the other.

Before taking leave of this inquiry, I think it admissible to survey the section in the order of clauses, as we may suppose its framers constructed it, and seek to ascertain how their minds were moved in designing the various parts. In looking at the section in this way a numbering of the clauses will help distinctness.

1. The circuit courts shall have *original* jurisdiction in all matters, civil and criminal, not excepted in this constitution, and not prohibited by law;

2. And appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same;

3. They shall also have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari;*

4. And other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and tribunals within their respective jurisdictions.

The first clause was framed plainly enough to grant general original jurisdiction, subject, however, to the general exception stated; and it is equally plain that the second clause was drawn to convey general appellate power; both

32 MICH.—48.

grants, as well as the exception in the first, being couched in general terms.

·Having thus in broad language conferred original and appellate jurisdiction, and having made an exception in broad language from the grant of original jurisdiction, we may suppose it was deemed needful to be more specific in regard to certain features of jurisdiction, and likewise essential to exclude such features from the operation of the exception in the first grant, and to that extent to fix specifically and positively the power of the court; that having this in mind, the third clause was added in the nature of a proviso, or exception out of the exception, so as to assure the right to employ any of the enumerated proceedings whenever applicable.

Having proceeded thus far with the section in the effort to prescribe and regulate the jurisdiction, it is not unreasonable to suppose its authors conceived that there might be other proceedings essential to the jurisdiction intended to be vested, and which, notwithstanding the admissible implications from other grants, might be claimed to be excluded as an effect of the previous specific enumerations, unless such result should be guarded against by a supplementary provision; and then, imitating, not very distantly, the federal convention when it authorized "all laws necessary and proper," etc., the last clause was added out of prudent caution, and not with any design to hamper the power to employ the proceedings previously enumerated.

Such, in brief, appears to me a fair explanation; and, as a consequence, that the question as to the power of the circuit courts should be answered in the negative.