## MITCHELL v. WRIGHT et al.
### No. 102.

District Court, M. D. Alabama, E. D.
Jan. 8, 1947.

700

See, also, 62 F.Supp. 580.

Thurgood Marshall, of New York City, and Arthur D. Shores, of Birmingham, Ala., for plaintiff.

William N. McQueen, Atty. Gen. of Alabama, Richard T. Rives, (of Hill, Hill, Whiting & Rives); of Montgomery, Ala., E. C. Boswell, of Geneva, Ala., and W. C. Hare, of Tuskegee, Ala., for defendants.

CHARLES B. KENNAMER, District Judge.

Plaintiff, a Negro citizen of Macon County, Alabama, by bill of complaint, as amended, seeks from the above named defendants, injunctive relief, a declaratory judgment, and, by stipulation, nominal damages, on account of, as alleged in the bill of complaint as amended, failure on the part of the defendants, in their individual capacity, and as members of the Board of Registrars of Macon County, Alabama, to register the Plaintiff as a qualified elector solely on account of his race and color, contrary to the anti-discrimination provisions of the United States Constitution. Amendment 15, § 1.

Answer, denying the material allegations of the plaintiff's bill of complaint as amended, and including a motion to dismiss the class action feature of the suit, was filed by the defendants. The court, by separate order, granted the motion to dismiss the class action part of the suit and limited the suit to an action between the plaintiff Mitchell only and the defendants. At the trial of Complainant Mitchell's case, all evidence that might have tended to make out a class action suit was admitted over objections of the defendants.

The court, having heard testimony offered by the plaintiff and the defendants, on the bill of complaint as amended, and answer; and having heard arguments of counsel for the respective parties, makes the following findings of fact, conclusions of law, and decree, with opinion attached.

Findings of Fact

Macon County, Alabama, is situated in the middle district of Alabama, within the jurisdiction of this court. It has a population, according to the 1940 census, of 27,654 persons, 4,728 or 17.9% being white persons, and 22,926 or 82.1% being Negro persons. There are 3,124 white persons and 13,734 Negro persons of voting age in the County.

The Plaintiff, William P. Mitchell, a Physical Therapy Technician at the Veterans Hospital at Tuskegee, Alabama, possesses all the qualifications and none of the disqualifications necessary to be a qualified voter under the Constitution and laws of the State of Alabama.

Provision is made by the statutes of the State of Alabama, Title 17, Section 53, Code of Alabama, for the Board of Registrars of the several counties in the State to "Make such rules and regulations as it deems proper for the receipt of applications for registration and the accomplishing in as expedient a manner as possible the registration of those entitled to register, but no person shall be registered until a majority of the board of registrars has passed favorably upon such person's qualifications."

These rules and regulations, once established by the Board of Registrars, have the force and effect of law, and are to be complied with the same as if they were statutory before an applicant is registered as a qualified elector.

The Board of Registrars of Macon County, composed of three persons, two of whom are the named defendants in this action, made such rules and regulations as the statute provided, for the orderly registration of applicants. These rules and regulations were fair and necessary for the expeditious registration of applicants.

They had the authority, and did, when the situation necessitated it, make new rules and regulations. The authority to make such rules and regulations is not here challenged.

It was prescribed by this Board that an applicant for registration should appear in person before one of the members of the Board and make answer to a printed application blank, which answers were written in the blank spaces provided on the application blank by the member of the Board. The applicant then gave the names of two persons living in the County, who were qualified voters and known to the Board member, as references or vouchers who would certify to the Board of the personal knowledge of the present bona fide residence at the place stated in the application blank.

The names of the two references or vouchers were written on the application blank by the Board member and the applicant then signed the application blank and swore to the correctness of the answers made therein.

After an applicant appeared before one of the members of the Board and made application to be registered as a qualified elector, gave the names of two persons as references or vouchers, and signed and swore to the application form, it was then necessary, under the rules and regulations established by the Board, for one of the persons given as references or vouchers to appear before the Board in its official capacity as a Board of Registrars, and certify to the Board of personal knowledge of the present bona fide residence at the place stated in the application blank.

The law of the State of Alabama provides that two or more members of the Board of Registrars must be present and serving to constitute a legal quorum of the Board, and action had to be by two or more members for it to be the action of the Board.

It was the duty of the applicant to get one of the persons whose name he gave as a reference or voucher to go before the Board and vouch for him or her. If neither of the persons given as references or vouchers appeared before the Board to vouch for the applicant, the applicant was not registered. If one of the persons named as reference or voucher appeared before the Board and vouched for the applicant, and signed the application blank in the space provided for such reference or voucher, the applicant was then registered and a certificate of registration was mailed to him or her.

No person was ever registered by the Board of Registrars of Macon County, during the time these two defendants served on said Board, without one of the named references or vouchers first appearing before the Board and vouching for the bona fide residence of the applicant, and signing the application blank as a reference or voucher in the presence of the Board.

At the session of the Board on or about the 5th of July, 1945, at which time this plaintiff made application to be registered, and while the two defendants were members of the Board, ten Negroes and seven whites were registered as qualified voters. At this session of the Board, some ninety Negroes made application to be registered; only seven white persons applied. Of the ninety Negroes who applied to be registered, only the ten who were registered produced persons to vouch for them, as provided by the rules of the Board. All of the seven white persons who applied for registration, and were registered, produced persons to vouch for them.

Plaintiff Mitchell appeared before the Board on July 5, 1945, and made application to be registered. His application blank was properly filled out, and he gave the names of two qualified citizens of Macon County, W. A. Campbell and G. W. A. Johnston, one a white man and the other a Negro, to vouch for him, or to certify that he was a bona fide resident of the place stated in his application blank. Both of these references were known to the Board; both were qualified voters of Macon County. Neither of them ever appeared before the Board and offered to vouch for the Plaintiff.

Johnston, the Negro, a former Secretary to the late Booker T. Washington, and for many years an employee of Tuskegee Institute, and now, on account of age, a retired employee of that great Institution, testifies that he did not know that the Plaintiff Mitchell had given his name as a reference

702

or voucher; that he never authorized the Plaintiff to use his name as a reference; that, although he was a neighbor of the Plaintiff Mitchell, he was never requested by Mitchell to go before the Board and vouch for him; and that he never went before the Board and vouched for Mitchell. He did vouch, or serve as a reference, for seven other Negro citizens at this session of the Board, who had applied for registration, and all seven were registered and certified as qualified electors by the Board. Johnston also appeared before the Board on several other occasions and vouched for other Negro citizens who had applied for registration, and in every instance such citizens were registered.

Campbell, the white man, testifies that the Plaintiff Mitchell asked him to go before the Board and vouch for him, and that he went to the Court House one day and looked in, but there was a crowd there, so he left and never did go back.

The Plaintiff's application blank is not signed by anyone as a reference or voucher to his being a bona fide resident of the place stated in his application blank.

The Board, when applicants were properly vouched for, registered Negroes and whites alike.

The court does not find a single instance where a person, Negro or white, was registered by the Board without first being vouched for by one of the persons named in the application blank as references or vouchers.

The court is unable to find from the evidence any guilt on the part of the defendants of any racial prejudice or racial discrimination in the performance of their duties as members of the Board of Registrars of Macon County, Alabama.

At times when the Board members were taking applications to be registered, persons given as vouchers or references appeared before one of the members of the Board and stated that he or she would like to vouch for a certain applicant but were told that it would be necessary for them to come back when they, the Board members, were through taking applications, and appear before the Board, or at least two members of the Board. No date or time was set for

the person to come back and appear before the Board as a reference or voucher, and the person was never informed as to when the Board would be through taking applications. It was a rule of the Board, applied to Negroes and whites alike, to take all applications before hearing the vouchers or references. There was irregularity and indefiniteness in setting a time when a person given as a reference or voucher could appear before the Board and vouch for an applicant.

There are Negro voters in Macon County. The Board did not require the persons given as references or vouchers to be white persons. Negro citizens were given as references or vouchers on numerous occasions and appeared before the Board and vouched for applicants who were registered by the Board.

Neither of the defendants is now a member of the Board of Registrars of Macon County.

### Conclusions of Law

■ The Constitution of the State of Alabama, and the laws made in pursuance thereof, as relating to the registration of persons as electors, are, so far as they relate to this case, fair and non-discriminatory.

■ State Officers are presumed to administer constitutional rights equally to all races, and the burden is on the complainant to prove a denial of constitutional rights by racial discrimination.

■ The members of the Boards of Registrars of the different counties of Alabama are State Officers.

The Boards of Registrars of the different counties of Alabama have the authority to make and establish such rules and regulations as they deem wise to the efficient discharge of the duties of the office.

■ All rules and regulations established by the Board of Registrars have the force and effect of law and must be applied to all persons equally and without discrimination.

■ The United States district courts have the jurisdiction to hear and determine the sufficiency of allegations of denial of

constitutional rights by denying registration to a citizen solely because of race, color and previous condition of servitude.

■ A person is not entitled to registration as an elector in Alabama who does not possess the required qualifications, possesses none of the disqualifications, and has complied with the rules and regulations prescribed by the Board of Registrars.

■ Where an applicant for registration as an elector in Alabama fails to comply with the legal requirements, it is not a denial of constitutional rights to deny registration because of failure to comply with prescribed requirements, if such requirements are made of all persons applying for registration, irrespective of race, color or previous condition of servitude.

■ The right to register as an elector in Alabama, where all the constitutional and statutory requirements are met, and where all the rules and regulations have been complied with, cannot be denied a citizen merely because he is a member of the Negro race.

A person is not entitled to registration as an elector in Alabama who does not meet the prescribed requirements, where such requirements are fair and legal and are fairly and equally administered.

■ An allegation of denial of constitutional rights because of racial discrimination is not proved by showing mere irregularities or inefficiency on the part of the Board of Registrars in the performance of its duties.

The burden is upon the plaintiff to prove a denial of constitutional rights by racial discrimination, where such is alleged, and this burden is not met by merely showing that complainant is a member of the Negro race and is qualified in all particulars to be an elector.

A member of the Negro race who possesses all the qualifications necessary to become an elector in Alabama, possesses none of the disqualifications, and has complied with all the rules and regulations established by the Board of Registrars for the efficient discharge of the duties of such Board, is entitled to be registered as a qualified elector; and any device, scheme, or artifice designed by members of such a Board of Registrars, to deny such a person registration solely on account of race, color or previous condition of servitude, is in violation of the Constitution and laws of the United States of America, and of the State of Alabama, and any member or members of a Board of Registrars of any county of the State of Alabama who engaged in such a device, scheme, or artifice, would be guilty of denying to such an applicant for registration a constitutional right.

■ ■In a county where the population is predominantly Negro, the fact that there are more white than Negro electors in the county, is not of itself proof of racial discrimination by members of the Board of Registrars.

## Order of the Court

It is ordered, adjudged and decreed by the court that judgment be, and the same is, for the defendants, and plaintiff is taxed with the cost, for which execution will issue.

## Opinion

■ It is well settled law that the power to bestow the privilege of exercising the elective franchise on citizens, is primarily the right of the States.

■ The States can, by proper constitutional provisions or law, prescribe such definite and ascertainable standards, to be applied to all alike who seek to exercise the elective franchise, as the State may see proper to prescribe.

The only limitation on this power of the States, is the limitation imposed by the United States Constitution which prohibits standards which discriminate against persons of certain race, color, or previous condition of servitude; and no State may make or apply a standard which works a racial discrimination. If, in the administration of a perfectly proper and legal standard made by the State, such administration is conducted in a manner to work a racial discrimination, such administration would be in violation of the United States Constitution, and this Court has jurisdiction to grant relief in a proper action to persons against whom such discrimination is practiced.

704

Where constitutional provisions of a State, the statutory laws, and rules and regulations made in pursuance thereof, are all in strict conformity to the United States Constitution and the amendments thereto, if a Board of Registrars in administering such laws and rules and regulations did so in such manner as to work a racial discrimination in violation of the rights of citizens protected by the Constitution and laws of the United States of America, and that is the contention of the Plaintiff here, the findings and judgment of the court should be, and would be, for the Plaintiff, if such contention was sufficiently supported by the evidence in the case. However, the evidence in this case fails to support such contention.

There was an entire absence of any evidence tending to show any racial prejudice on the part of the defendants in the exercise of their duties as members of the Board of Registrars of Macon County. On the contrary it was affirmatively shown that when Negro citizens appeared before the defendants to make application to register, they were treated with courtesy, and every proper consideration was shown such applicants; and such applicants were at no time required to stand aside or give way to white applicants.

The Plaintiff alleged in his bill of complaint, among other things, that: "He filled out the regular form for registration, he produced two persons to vouch for him, as required by the Board." The evidence was absolutely to the contrary. He never produced anyone to vouch for him, and no one ever did appear before the Board and vouch for him. If the Plaintiff had requested his neighbor, the highly respected and reliable Negro citizen, G. W. A. Johnston, to go before the Board, after he gave his name as a reference, there probably would have been no occasion for this suit by this Plaintiff.

The Plaintiff has failed to present evidence to substantiate the allegations of race discrimination by the defendants, or that they required Negroes to submit to tests not required of white electors applying for registration, or that they carried on a general, habitual and systematic practice of refusing to register Negro residents of Macon County.