SCHOBERT *v.* INTER-COUNTY DRAINAGE BOARD.

1. COURTS—CIRCUIT COURTS—JURISDICTION—CONSTITUTIONAL LAW.
   Circuit courts were intended by the Constitution to have, and
   have, plenary jurisdiction in matters of mandamus, subject
   only to the restrictions properly flowing from the Constitu-
   tion itself (Const 1908, art 7, § 10).

2. MANDAMUS—CIRCUIT COURT—STATE OFFICERS—JURISDICTION—SU-
   PREME COURT.
   The circuit court does not have jurisdiction to issue a writ of
   mandamus against State officers, such jurisdiction resting ex-
   clusively with the Supreme Court.

3. CONSTITUTIONAL LAW—CONSTRUCTION OF TERMS—STATE OFFICERS.
   The term "State officer," as used in the Constitution, is not so
   broad as to cover officials performing functions having author-
   ization in constitutional and statutory provisions applicable
   to the State at large or partaking to some extent of the police
   power of the State, one who implements sovereign policy but
   construction of the term is to be governed by the purpose
   of the act or clause in connection with which it is employed.

4. MANDAMUS—CIRCUIT COURT—COUNTY DRAIN COMMISSIONERS.
   County drain commissioners, as members of an inter-county drain-
   age board, are not "State officers" beyond the jurisdiction of a
   writ of mandamus by the circuit court, as such commissioners
   are not intrusted with the general administration of State
   affairs, are not heads of State departments, their authority
   is not coextensive with the borders of the State and the in-
   terest of the State at large in an inter-county drain is not
   involved except in a most general sense (CL 1948 and CLS
   1952, § 261.1 *et seq.*, as amended).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 34 Am Jur, Mandamus § 21 *et seq.*
[3, 4] See, generally, 49 Am Jur, States, Territories, and Dependen-
   cies § 52.
[5] See, generally, 17 Am Jur, Drains and Sewers § 56.
[6] See, generally, 2 Am Jur, Appeal and Error § 125; 3 Am Jur,
   Appeal and Error §§ 737, 863.
[7] 14 Am Jur, Costs §§ 37, 91.

5. DRAINS—BRIDGES TO CONNECT PROPERTY SEVERED BY INTER-COUNTY DRAINS.

Whether or not owners of property traversed by an inter-county drain are entitled to writ of mandamus to compel members of the inter-county drainage board to make a further assessment for the purpose of constructing bridges or passageways required by law to connect portions of property severed by such a drain is a matter of local concern (CL 1948 and CLS 1952, § 261 *et seq.*, as amended).

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DEPUTY COMMISSIONER OF AGRICULTURE—STATE OFFICERS.

Whether or not a deputy, appointed by the State commissioner of agriculture to constitute one of an inter-county drainage board, is a State officer beyond the reach of a writ of mandamus of a circuit court, is not determined on appeal from denial of motion to dismiss, where a quorum of the board is subject to a writ issued by such court.

7. COSTS—PUBLIC QUESTION—JURISDICTION OF CIRCUIT COURT OVER INTER-COUNTY DRAIN BOARD.

No costs are allowed on appeal from denial of motion to dismiss writ of mandamus issued by a circuit court whereby it was sought to compel an inter-county drainage board to make a further assessment for the purpose of constructing bridges or passageways to connect portions of plaintiffs' farms severed by the drain, where a public question was presented as to whether or not the members of the board were State officers beyond the reach of a writ of mandamus issued by the circuit court (CL 1948 and CLS 1952, § 261.1 *et seq.*, as amended).

Appeal from Tuscola; Black (Eugene F.), J., presiding. Submitted January 11, 1955. (Calendar No. 46,307.) Decided April 14, 1955.

Petition by Frank Schobert and others for a writ of mandamus directed to the Inter-County Drainage Board of Tuscola, Sanilac and Lapeer Counties for the White Creek No 2 Inter-County Drain to enforce construction of suitable passageways across drain on plaintiffs' farms and further assessment therefor. John Hudson, deputy director of agriculture and chief of drainage, a member of the board, appeared specially and moved to dismiss. Motion

to dismiss denied. Hudson, as deputy director, and the people of the State of Michigan, by the attorney general, as intervenor, appeal. Affirmed.

*Churchill & Andreychuk,* for plaintiffs.

*White & Williams,* for defendant Inter-County Drainage Board, asking affirmance.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons,* Chief Assistant Attorney General, for defendant Hudson and defendant-intervenor State of Michigan.

SMITH, J. Plaintiffs herein are farmers in the county of Tuscola. They have filed a petition for writ of mandamus against the defendant, Inter-County Drainage Board of Tuscola, Sanilac and Lapeer counties for the White Creek No 2 Inter-County Drain. It was the complaint of the plaintiffs that the defendant board caused the construction of an inter-county drain which crossed their farms. Having done so, and having thus severed plaintiffs' farms into "disconnected portions," the defendant board found itself without funds for the construction of suitable bridges or passageways across the drains. As a result, the farmers cannot move their stock and machinery from one part of their farms to another without either traveling on public roads or the privately owned lands of others. The plaintiffs assert that under the provisions of the general drain law (CL 1948 and CLS 1952, § 261.1 *et seq.,* as amended [Stat Ann 1952 Rev and Stat Ann 1953 Cum Supp § 11.1 *et seq.,* as amended]), it was the duty of the defendant to make a further assessment to provide funds for the construction of bridges or passageways required by law. They prayed that a

writ of mandamus issue, commanding the board to make a further assessment for such purpose and directing the defendant to undertake such construction.

An order to show cause was issued on May 15, 1954. The attorney general appeared. specially on behalf of John Hudson, chief of drainage of the department of agriculture of the State of Michigan, and a member of the defendant board, and moved to dismiss on the following grounds:

"1. That this defendant is a State officer of the State of Michigan;

"2. That all the members of said inter-county drainage board above named are State officers and not local officers;

"3. That circuit courts are by law forbidden to issue writs of mandamus against State officers."

The trial court, on June 17, 1954, denied the attorney general's motion to dismiss and entered an order upholding the jurisdiction of the court. Subsequently, the attorney general intervened on behalf of the people and upon leave granted has appealed from the order of the circuit court denying defendant John Hudson's motion to dismiss. The defendant board has not appealed but has filed a brief sustaining the circuit court's jurisdiction.

The applicable statute above cited (particularly CLS 1952, § 265.2 [Stat Ann 1952 Rev § 11.42]), provides, as to an inter-county drain, that "the drain commissioners interested" and the State commissioner of agriculture, "or any deputy selected by him," shall constitute such drainage board. With respect thereto appellant takes a broad position. He asserts that not only the deputy appointed by the commissioner of agriculture to act for him, but all of the members of the inter-county drain board are State officers. From this premise he argues that the

circuit court was without jurisdiction to issue the writ as prayed because of CL 1948, §§ 606.1, 636.3 (Stat Ann §§ 27.542, 27.2230), providing that no circuit court has jurisdiction to issue a writ of mandamus against State officers. In addition, and so far as the officers concerned comprise an official board, we are pressed with the argument that the powers of a circuit court with respect to mandamus are narrowly circumscribed by article 7, § 10, of the Constitution (1908); that, in fact, the "circuit courts have no power to issue writs of mandamus generally unless such power has been given to them under the terms of the section in question by the Supreme Court." Appellant then argues, as to jurisdiction under Court Rule No 43 (1945), "unless the intercounty drainage board is a county board there is under the terms of Court Rule No 43 a total lack of authority for circuit courts to try mandamus cases against such boards."

In view of its importance we will consider first the constitutional challenge to the jurisdiction of the circuit court. This stems from the case of *McBride v. Common Council of Grand Rapids,* 32 Mich 360, which involved the interpretation of article 6, § 8, of the Constitution of 1850:

"The circuit court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; and appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same. They shall also have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other writs necessary to carry into effect their orders, judgments and decrees, and give them general control over inferior courts and tribunals within their respective jurisdictions."

The case concerned an application for a mandamus to compel the common council of Grand Rapids to

issue a salary warrant to the applicant. The court
denied the mandamus, concluding that (p 367)

"the Constitution does not give to the circuit
courts jurisdiction of the enumerated writs, except
for the purposes of the jurisdiction which in general
terms is conferred; and that the writ of mandamus
has a very limited application within that jurisdic-
tion, not extending to the present case."

A vigorous dissent by Chief Justice Graves chal-
lenged the conclusion of the majority, reasoning, in
part, as follows (pp 377, 378):

"Before taking leave of this inquiry, I think it ad-
missible to survey the section in the order of clauses,
as we may suppose its framers constructed it, and
seek to ascertain how their minds were moved in
designing the various parts. In looking at the sec-
tion in this way a numbering of the clauses will help
distinctness.

"1. The circuit courts shall have original jurisdic-
tion in all matters, civil and criminal, not excepted
in this Constitution, and not prohibited by law;

"2. And appellate jurisdiction from all inferior
courts and tribunals, and a supervisory control of
the same;

"3. They shall also have power to issue writs of
habeas corpus, mandamus, injunction, quo warranto,
certiorari;

"4. And other writs necessary to carry into effect
their orders, judgments and decrees, and give them
a general control over inferior courts and tribunals
within their respective jurisdictions.

"The first clause was framed plainly enough to
grant general original jurisdiction, subject, how-
ever, to the general exception stated; and it is equal-
ly plain that the second clause was drawn to convey
general appellate power; both grants, as well as the
exception in the first, being couched in general terms.

"Having thus in broad language conferred orig-
inal and appellate jurisdiction, and having made an

exception in broad language from the grant of original jurisdiction, we may suppose it was deemed needful to be more specific in regard to certain features of jurisdiction, and likewise essential to exclude such features from the operation of the exception in the first grant, and to that extent to fix specifically and positively the power of the court; that having this in mind, the third clause was added in the nature of a proviso, or exception out of the exception, so as to assure the right to employ any of the enumerated proceedings whenever applicable.

"Having proceeded thus far with the section in the effort to prescribe and regulate the jurisdiction, it is not unreasonable to suppose its authors conceived that there might be other proceedings essential to the jurisdiction intended to be vested, and which, notwithstanding the admissible implications from other grants, might be claimed to be excluded as an effect of the previous specific enumerations, unless such result should be guarded against by a supplementary provision; and then, imitating, not very distinctly, the Federal convention when it authorized 'all laws necessary and proper,' et cetera, the last clause was added out of prudent caution, and not with any design to hamper the power to employ the proceedings previously enumerated."

The attorney general asserts that the majority opinion states the prevailing rule today. We are constrained to hold otherwise. The matter was fully considered and debated at the time of the formulation and adoption of the Constitution of 1908. In the official report of the Proceedings and Debates of the Constitutional Convention of the State of Michigan (Vol 2, p 1308), will be found the following:

"The secretary read section 10 of article 7 as follows:

"Section 10. Circuit courts shall have original jurisdiction in all matters civil and criminal not

excepted in this Constitution and not prohibited by law, and appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same. They shall also have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari and other writs necessary to carry into effect their orders, judgments and decrees, and give them general control over inferior courts and tribunals within their respective jurisdictions, and in all such other cases and matters as the Supreme Court shall by rule prescribe.

"*The Chairman:* Are there any amendments to section 10?

"*Mr. Adams:* In line 63 I move to amend by striking out the comma after the word 'warranto' and inserting in lieu thereof the word 'and;' by inserting after the word 'certiorari' the words 'and to hear and determine the same;' by inserting in line 64 after the word 'and' the words 'to issue such' and by inserting after the word 'writs' the words 'as may be.'

"The meaning is not clear as it reads in the present section. Have they the power to issue writs of habeas corpus, mandamus, injunctions, et cetera, to carry into effect their orders, judgments and decrees? Is that what it means? Or does it mean that they have the right to issue the writs independently? And if they are to have the right to issue them, what court is to hear and determine them? The language is not clear. And while this amendment may be technical I want to say now that there is a case pending in the Supreme Court where that very question is raised—that the circuit court has no power to issue writs of mandamus, habeas corpus, injunctions, quo warranto and certiorari except to carry into effect their orders and decrees, and not as independent writs. The language I suggest will make it clear, and it follows the language used in the section pertaining to the Supreme Court. On page 26 in lines 16 and 17 it reads 'remedial writs, and to hear and determine the same.' If that language is

used with reference to the Supreme Court it ought
to be used with reference to the circuit court. * * *
"*The Chairman:* The question is upon the amend-
ment.
"The question was taken and upon a division—
yeas 34, nays 28—the amendment was agreed to.
"*The Chairman:* Are there any further amend-
ments to this section? If not, it will be passed.
(After a pause.) It is passed."

The final draft of the section is as now appears
in article 7, § 10, of the Constitution (1908), which
reads:

"Circuit courts shall have original jurisdiction in
all matters civil and criminal not excepted in this
Constitution and not prohibited by law, and appel-
late jurisdiction from all inferior courts and tribu-
nals and a supervisory control of the same. They
shall also have power to issue writs of habeas corpus,
mandamus, injunction, quo warranto and certiorari
and to hear and determine the same; and to issue
such other writs as may be necessary to carry into
effect their orders, judgments and decrees and give
them general control over inferior courts and tribu-
nals within their respective jurisdictions, and in all
such other cases and matters as the Supreme Court
shall by rule prescribe."

It is clear, then, under the present Constitution,
that the circuit courts were intended to have, and
have, plenary jurisdiction in matters of mandamus,
subject only to the restrictions properly flowing from
the Constitution itself.

It remains, however, to be considered whether or
not the facts of the instant case bring it within the
prohibitions of CL 1948, §§ 606.1, 636.3 (Stat Ann
§§ 27.542, 27.2230). This in turn brings up for deci-
sion whether or not the officials comprising the de-
fendant Inter-County Drainage Board are "State
officers" within the meaning of such acts. If so,

the circuit court's mandamus cannot run against them and jurisdiction will rest exclusively with this Court.

It is not peculiar to Michigan that particular jurisdictional provisions obtain as to mandamus against "State officers." Thus we find in the constitution of Arizona (art 6, § 4) that "the supreme court shall have original jurisdiction in habeas corpus, and quo warranto and mandamus as to all State officers." In Wyoming (art 5, § 3) the phrasing varies but slightly, "original jurisdiction in quo warranto and mandamus as to all State officers, and in habeas corpus." In the Texas statutes the phrase takes a much broader turn, it being provided in Vernon's Annotated Civil Statutes (art 1735) that "the supreme court only shall have power, authority or jurisdiction to issue the writ of mandamus * * * against any of the officers of the executive departments of the government of this State." We shall return to this statute and its construction. In the State of Washington, also, the constitution provides (art 4, § 4) that "the supreme court shall have original jurisdiction in * * * mandamus as to all State officers." There are many others, but the foregoing are typical and illustrative.

A closely related problem of construction is presented in all of these enactments, namely, just what cases shall be heard exclusively by the supreme court of the State. Thus shall the Texas court take literally the requirement that only it shall have the jurisdiction over "any" of the officers of the executive department of the State government? If so, considering the vast number of such officers, the court must greatly change its numbers, structure, and organization. Or, in the State of Washington, where the supreme court's jurisdiction in mandamus to State officers is concurrent with that of the superior court, just which of the State officers (in the

broad sense) will be relegated for trial to the superior courts? In Michigan the problem under our statute is in essence similar, namely, what is a State officer within the meaning of the circuit court prohibition as to jurisdiction?

On the one hand, it is clear that the term "State officer" is so broad as to embrace the literally hundreds of officials within the State who perform, in varying degrees, functions having their authorization in constitutional provisions and statutory enactments applicable to the State at large or partaking to some extent of the police power of the State. Thus, in a sense, and to the extent that the performance of their official functions involves the administration of State laws, county and municipal officials, prosecutors, judges, treasurers, police and school officials, drain commissioners and hosts of others are all State officials.

On the other hand, as opposed to such broad usage, the use of the term "State officer" in the Michigan Constitution (1908) is specific. We start with the proposition (article 4, § 1) that the powers of government are divided into 3 departments, legislative, executive, and judicial. As to the executive department we find that article 6, § 1, is devoted to "State officers; election, term, duties," the section making reference to the governor, lieutenant governor, secretary of State, State treasurer, commissioner of State land office, auditor general, and attorney general. Vacancies in any of the "State offices" are provided for in section 10 of the same article, it providing that the governor shall fill the same by appointment, by and with the advice and consent of the senate. We also find salaries of "State officers" governed by section 21 of the same article. It is also significant to note that in the Constitution we also find provisions respecting municipal and town-

ship officers as well, *e.g.*, article 9, §§ 7 and 8, article 8, § 18.

We cannot conclude, in view of the foregoing, that the term "State officer" as employed in our fundamental charter embraces the broad usage tendered to us. In fact, in view of the language in the Constitution itself, there is much to commend the view of the Texas court that the provisions of the statutes of that State, above cited, apply only to the executive officers named in the Constitution, despite the apparent breadth of the phrase "any of the officers of the executive department of the government of the State." *Texas Liquor Control Board* v. *Continental Distilling Sales Co.* (Tex Civ App, 1947), 199 SW2d 1009, writ of error denied, 145 Tex 691, application for appeal to supreme court of the United States denied (Tex Civ App, 1947), 203 SW 2d 288, appeal dismissed, 332 US 747 (68 S Ct 26, 92 L ed 335).

It is clear from what has this far been observed that in one sense of the term a State officer is one who exercises a portion of the sovereign powers on a State-wide basis, normally from the seat of government, such as the attorney general, while in another, a State officer is any official whatsoever whose duties embrace the implementation of sovereign policy, however expressed, such as the village constable. See *State, ex rel. Milwaukee Medical College,* v. *Chittenden,* 127 Wis 468 (107 NW 500); *Stone* v. *State, ex rel. Courtney,* 233 Ala 239 (171 So 362); *State, ex rel. Burns,* v. *Linn,* 49 Okla 526 (153 P 826). From such dichotomy we derive no comfort, however, for it is equally clear that the term "State officer" will vary in content with its use and context, and that the same officeholder may be an officer of the State for one purpose and not for another. Thus we might well hold that a county, township, or municipal election official is a State officer as con-

cerns the duty of State officers to administer constitutional rights equally to all races (e.g., Mitchell v. Wright, 69 F Supp 698) while at the same time denying that he is a State officer to the extent that a vacancy in his office could only be filled by the governor by and with the advice and consent of the senate.

We are not so bold as to attempt an all-embracing definition of "State officer." The precise delineation of the term will await our rulings as cases are brought before us. In each instance the meaning of the term "State officer" will be governed by the purpose of the act or clause in connection with which it is employed. We are here concerned with a matter of jurisdiction and forum. A farmer asserts that his land has been traversed by drains and left without the bridges required by statute. As a result thereof he cannot cross, he says, from one part of his farm to another "with men, machinery, animals, or produce" without traveling on public roads, or, in one instance, without invading the privately-owned land of others. As a result he asks, in short, that the defendant bridge the drains. This is a matter peculiarly appropriate for resolution by the local courts. Local witnesses will be heard, and a jury from the vicinage may view the local premises. True, there is a State law in the background, but few of our affairs today are conducted without such hovering presence.

Just why is it that jurisdiction is denied to local courts in mandamus involving State officers? What is the purpose of the restriction? Chief Justice Gaines of the supreme court of Texas, in discussing the mandamus jurisdiction of that court in Betts v. Johnson, 96 Tex 360, 363 (73 SW 4), phrased the answer in the following terms:

"We can see a reason why the court should have been empowered to grant writs of mandamus against

the heads of the departments of the State government. These officers must reside and their offices must be kept at the seat of the State government and their official functions are to be performed there. A mandamus proceeding against the head of a department, as a rule, involves questions which are of general public interest and call for a speedy determination. That they are of far more importance than those ordinarily arising in mandamus suits against other officers, whether of the State or of a district or a county, is as we think obvious.

"We fail to see any very good and sufficient reason why the legislature should have deemed it appropriate to confer original jurisdiction upon this court to grant a writ of mandamus against executive officers other than those intrusted with the general administration of State affairs, and who exercise general governmental functions. Others are officers in a certain sense; but in another sense, they are mere agents charged with the performance of special functions."

Similar views as to matters properly cognizable before the highest court of a State are found in *Attorney General* v. *City of Eau Claire,* 37 Wis 400, 445, in which the court, in discussing mandamus, held:

"These are questions *publici juris,* as are title to local public office, performance of local official duty, use of local highways, maintenance of local public buildings, abuse of local power or franchise, and kindred local matters. But these are not generally questions directly involving the sovereign prerogative or the interest of the State at large, so as to call for the prerogative jurisdiction of this court. As a rule, no extraordinary jurisdiction is necessary or proper for them; the ordinary jurisdiction of the circuit court being ample. Practically it would be impossible to take jurisdiction of them all here; and we intend to assume jurisdiction of none of them, which are not taken out of the rule by some

exceptional cause. When they are governed by some peculiarity which brings them within the spirit and object of the original jurisdiction of this court, we will entertain them. Otherwise they will be left to the circuit courts."

Tested by the criteria suggested, which commend themselves to us, we are unable to conclude that the drain commissioners comprising the defendant board are "State officials" within the meaning of the statute. They are not intrusted with the general administration of State affairs; they are not heads of State departments; their authority is not coextensive with the borders of the State; nor is the interest of the State at large involved save in a most general sense. The matter presented, while important, is a matter primarily local in extent and character.

While it is true that the jurisdictional question here presented was not argued in the case of *Hoad* v. *Van Wagoner*, 278 Mich 600, 607, 609, nevertheless the conclusion there reached is in complete accord with our present holding:

"Plaintiffs' remedy, if any, was by mandamus in each of the counties where the drain commissioner and corresponding county treasurer could be joined, along with the inter-county drainage board, all as proper parties.   *   *   *

"Mandamus afforded a proper and effective remedy to raise these legal questions and to afford the plaintiffs the relief sought in this proceeding."

To the same effect see *Hartwick* v. *Sanilac Drain Commissioner*, 338 Mich 624.

As to the remaining defendant John Hudson, it is asserted that he, as a deputy appointed by the commissioner of agriculture pursuant to CLS 1952, § 265.2 (Stat Ann 1952 Rev § 11.42), is indubitably a "State officer" regardless of the status of the drain

commissioners, and, hence, that the mandamus of the circuit court could not run against him. We are far from convinced that "any" deputy selected by the commissioner of agriculture to constitute one of an inter-county drain board thereby becomes a "State officer," as we construe the term, if, indeed, he sits in an official, rather than an individual, capacity at all. *Groesbeck* v. *Auditor General,* 216 Mich 243 (21 ALR 249). It is not necessary, however, to dispose of these questions since we agree with the trial court that the principle of *Huidekoper* v. *Hadley* (CCA), 177 F 1, 12, 13 (40 LRA NS 505), certiorari dismissed, 223 US 735 (32 S Ct 529, 56 L ed 635), is fully applicable here:

"In view of these wise and temperate observations and of the fact that the Missouri doctrine is in harmony with the great weight of authority, we shall conform to that doctrine, and hold that the respondent, Hadley (governor), is not subject to the writ of mandamus in the present case.

"But this is not conclusive of the inquiry before us. The governor is only 1 out of 5 members of the State board of equalization. Any 3 of them, according to the statute (section 9126, Rev Stat) constitute a quorum for the transaction of business. The reason why the governor cannot be coerced by mandamus is that he needs no such coercion; he is conclusively presumed to be willing to perform all his executive duties. His constitutional* obligations to see that the laws of the State shall be faithfully executed (article 5, §§ 4, 6, Const) and his oath of office require him to support the constitution and demean himself faithfully in office (article 14, § 6, Const). The very reasons which exempt him from liability to the writ of mandamus are the ones which insure the performance of his duty as a member of the board of equalization. * * *

---

* References are to Missouri constitution of 1875 and Revised Statutes of Missouri, 1899.—REPORTER.

"But whatever the fact may be in this regard, the board is not one which requires either unanimity of consideration or of action by all its members. By special provision of law (section 9126, Rev Stat) any 3 of them constitute a quorum and are, therefore, competent to transact the business of the board in the absence of the other members. If the governor should be disabled by sickness or other infirmity from attending the sessions of the board, can it be doubted that the remaining members of that body could be compelled to proceed with the performance of their duty? Obviously not. Accordingly, we think the writ of mandamus may lawfully be awarded to secure action by a statutory quorum of the board in this case when circumstances are such that the entire membership cannot be reached by that writ."

We find no merit in appellant's remaining contentions. The order of the trial court is affirmed. No costs will be allowed, a public question being involved.

BUTZEL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.

CARR, C. J., and DETHMERS, J., concurred in the result.