PEOPLE *v.* FREEDLAND.

1. OFFICERS—TITLE OF POSITION.

The title of a position in public service is not determinative of the importance of the position, that is, whether the person holding it is an officer or an employee.

2. CRIMINAL LAW—OFFICERS—BRIBERY—SALES TAX ACCOUNTS EXAMINERS.

So-called junior field officer of sales tax division of former State board of tax administration whose duties were to examine accounts or check books of taxpayers under the general sales tax act, who had no right to hire or discharge employees nor the right to impose, or cancel, the taxes provided for by law was an employee of the board and not an executive officer within meaning of statute making it a felony for an executive officer

to accept a bribe (Act No. 328, § 118, Pub. Acts 1931; Act No. 167, § 21, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

3. OFFICERS—DEFINITION.

A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public, and the individual so invested is a public officer.

4. SAME—DISCRETION.

The duties of a public officer must be more than those of a mere agent or servant and he must be endowed by law with power and authority to use his own discretion.

5. SAME—DISCRETION—DISHONESTY OF A BOOKKEEPER.

The dishonesty of defendant bookkeeper who was an employee of the State board of tax administration which administered the general sales tax act and employed defendant to audit books of taxpayers does not constitute an abuse of discretion lodged in an executive officer for which, if obtained through bribery, the defendant is guilty of a felony (Act No. 328, § 118, Pub. Acts 1931; Act No. 167, § 21, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

6. SAME—BRIBERY—STATUTES—INTENT.

In determining whether or not one charged with felony for accepting a bribe is a public officer, each case is to be decided on its peculiar facts and involves, necessarily, a consideration of the legislative intent in framing the particular statute by which the position, whatever it may be, is created (Act No. 328, § 118, Pub. Acts 1931).

7. SAME—ESSENTIALS OF PUBLIC OFFICE.

In order to make any position of public employment a public office of a civil nature, it is necessary to show the office was created by the Constitution or legislature or by a municipality pursuant to authority conferred upon it; there is delegated to it a portion of the sovereign power of government to be exercised for the benefit of the public; the powers conferred and duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; the duties must be performed independently and without control of a superior power other than the law unless placed thereunder by the legislature; and that it have some permanency and continuity and not be only temporary or occasional.

8. SAME—OATH—BONDS.

Assistance in determining doubtful cases as to whether person in public service is an officer or an employee may be derived from whether or not an official oath or bond is required.

9. CRIMINAL LAW—BRIBERY—PUBLIC OFFICER—SALES TAX AC-COUNTS EXAMINER.

So-called junior field officer of sales tax division of former State board of tax administration who was employed to examine accounts of taxpayers was not a "public officer" as that term is used in penal code penalizing the giving and acceptance of bribes of public officers and servants (Act No. 328, §§ 117, 118, 125, Pub. Acts 1931; Act No. 167, § 21, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

10. INDICTMENT AND INFORMATION—ERRONEOUS REFERENCE TO STAT-UTE—SURPLUSAGE.

Erroneous reference to section of penal code at end of information charging defendant with accepting bribes and describing him as an accounts examiner of the State sales tax division constitutes no part of the information and was mere surplusage (Act No. 328, §§ 117, 118, 125, Pub. Acts 1931).

11. CRIMINAL LAW—SALES TAX ACCOUNTS EXAMINER—STATUTES—PUBLIC OFFICERS.

Defendant, charged with accepting a bribe and described in information as an accounts examiner of the State sales tax division, should have been proceeded against and, if found guilty, sentenced under section of penal code imposing penalty of misdemeanor upon employees accepting bribes rather than under section imposing felony upon public officers since he was not a public officer (Act No. 328, §§ 117, 118, 125, Pub. Acts 1931).

Appeal from Recorder's Court for the City of Detroit; Van Zile (Donald), J. Submitted January 13, 1944. (Docket No. 81, Calendar No. 42,392.) Decided April 3, 1944.

Benjamin Freedland was convicted of accepting a bribe as a public officer. Reversed and new trial granted.

*Asher L. Cornelius,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Joseph W. Louisell* and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorneys, for the people.

BUTZEL, J. Benjamin Freedland, described in the indictment as "an accounts examiner of the Michigan State sales tax division," was charged with accepting bribes so as to make a false audit of the books of Paul Wesner, owner of a tavern in the city of Detroit, in violation of section 118 of the penal code of the State of Michigan, being Act No. 328, § 118, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–118, Stat. Ann. § 28.313). This act refers to acceptance of bribes by an executive, legislative or judicial officer. Freedland had been directed to audit the records of Wesner's sales for a period of over three years in order to determine and collect the correct amount of sales taxes. He reported a deficiency of only $123.81. It is claimed that a much larger sum was due from Wesner but that defendant, in consideration of the sum of $350 paid to him in three instalments by Wesner, reported the smaller sum. While Wesner also sold groceries, the audit of his liquor sales was principally involved in the proofs.

We must first determine whether defendant was an executive officer of the State of Michigan within the meaning of section 118 under which Freedland was indicted, or whether he was merely an employee having neither the duties nor powers of an executive officer. Section 118 of the penal code provides that any executive, legislative or judicial officer guilty of accepting a bribe shall be punished by imprisonment in the State prison for not more than 10 years, or a fine of not more than $5,000, and shall forfeit

his office and be forever disqualified to hold any public office, trust or appointment under the Constitution or laws of this State.

Defendant claims on appeal that he was not proven guilty beyond a reasonable doubt, and that should this court find that the evidence did sustain the verdict and thus find that he accepted a bribe, nevertheless he was not a public officer and the charge should have been brought under section 125 of the penal code (Comp. Laws Supp. 1940, § 17115–125, Stat. Ann. § 28.320) which covers bribery of agents, employees, or servants of another or any other person, et cetera, and provides that any person violating any of the provisions of such section shall be guilty of a misdemeanor punishable by imprisonment in the county jail for not more than one year or by a fine of not more than $500. In *People* v. *Romanski*, 213 Mich. 636, a bribery case, we followed *People* v. *Day*, 185 Mich. 68, and set aside a conviction and discharged the defendant who had been prosecuted and convicted under a wrong statute.

In order to determine whether defendant was a public officer of the State of Michigan, a brief review of the testimony becomes necessary. A former branch manager of the Detroit office of the department of revenue of the Michigan sales tax division testified that Freedland was an employee whose duties were to investigate and audit taxpayers' records and ascertain whether the correct sales tax had been reported to the State of Michigan. Defendant was called a junior field officer with a salary of $200 a month. The title alone, however, would not be determinative of the importance of his position. He was not a certified public accountant. The work sheets in the sales tax office were compared with the junior auditor's report. In cases of

bars and liquor stores, the records of the breweries and the sources of supply of wine and liquors were examined so as to ascertain the amount of purchases by the retailer. The number of retail sales could be estimated from the number of bottles and barrels purchased. The cost of retail sales together with the profit made thereon could be readily figured out and thus the total amount of the sales were ascertained with a reasonable degree of accuracy.

Defendant contends that he was not a public officer for the following reasons:

(a) He did not fill any position that was established or created by statute or other legislation;

(b) There were no duties conferred upon his position by law;

(c) He was hired to perform his work and did not fill an appointive position;

(d) His position was completely lacking in the independence and dignity associated with a public officer;

(e) His position was completely lacking in discretionary powers which usually are inherent in a public office;

(f) He took no oath of office;

(g) He had no fixed tenure of office.

Defendant had no right to hire or discharge employees, nor the right to impose, or cancel, the taxes provided for by law.

The act creating the State board of tax administration, Act No. 167, § 21, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 3663-21, Stat. Ann. § 7.542), which was in force at the time that the audit was made and has been repealed by Act No. 122, Pub. Acts 1941, provided the duties and responsibilities of the board and further stated:

"The board may employ such assistants, clerks, stenographers or other employees. * * * Such employees shall receive such compensation."

It would seem that an auditor whose business was solely to check books would thus be an employee.

We find but little can be gained by examining the vast number of authorities cited on the question of whether one having the duties of defendant is an officer or not. The peculiar facts in each case distinguish it from the others. Many cases could be cited where persons holding offices similar to the one in the instant case were held to be employees. *State, ex rel. Barney,* v. *Hawkins,* 79 Mont. 506 (257 Pac. 411, 53 A. L. R. 583); *Hudson* v. *Annear,* 101 Col. 551 (75 Pac. [2d] 587); *State, ex rel. Gibson,* v. *Fernandez,* 40 N. M. 288 (58 Pac. [2d] 1197). A very large number of cases have been annotated in 53 A. L. R. 595; 93 A. L. R. 333; 140 A. L. R. 1076. We believe the correct rule is stated in Mechem on Public Offices and Officers, §§ 1 and 2, as follows:

"A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer."

" 'We apprehend that the term "office," ' said the judges of the supreme court of Maine, 'implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office; and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one

of the three great departments and sometimes to another, still it is a legal power which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the State.' "

The cases indicate that duties of a public officer must be more than those of a mere agent or servant. He must be endowed by law with power and authority to use his own discretion. Freedland could not exercise independent discretion; his duties were largely that of a bookkeeper and consisted of checking over the books of retailers to ascertain whether they had paid a correct tax or not. The work was mainly clerical and could have been performed in the office of the State board of tax administration, had the retailer brought his books and records there. Freedland could not exercise any discretion in omitting sales from his report; if he did so, he was guilty of a neglect of duty, not an abuse of discretion. His figures were subject to rechecking at the main office. This was seldom done. The dishonesty of a bookkeeper does not constitute an abuse of discretion.

Defendant testified that the auditing of books was to a large extent a mechanical process. He made neither sales nor purchases nor entered into contracts. He had no authority to bargain in order to obtain favorable contracts which had to be approved by others. He did not represent that he had duties and powers beyond those assigned to him. In the course of his work he did have the right to go into other stores, not particularly assigned to him, and make an audit but this also called for a mechanical process with the books. He appears to have been an auditing bookkeeper with but limited powers. Any power he did exercise was performed as an em-

ployee of the board of tax administration and radiated directly from the board and not from any statute or enabling act. It was not his duty to make recommendations necessary for the determination of the tax, but to ascertain facts from the books of the retail merchants or from the records of others and thus determine the tax in accordance with the law, subject, however, to review by his superiors.

We find a few cases which tend to uphold the State's contention that defendant was a public officer. *McGrath* v. *United States* (C. C. A.), 275 Fed. 294; *Attorney General* v. *Tillinghast,* 203 Mass. 539 (89 N. E. 1058, 17 Ann. Cas. 449); *State* v. *Duncan,* 153 Ind. 318 (54 N. E. 1066); *People* v. *Kerns,* 9 Cal. App. (2d) 72 (48 Pac. [2d] 750). From the very large number of cases, we quote a very recent one as it seems to state the rule expressed in the majority. In *Scofield* v. *Strain,* 142 Ohio St. 290, 295 (51 N. E. [2d] 1012), the court again stresses the rule stated in *State, ex rel. Hogan,* v. *Hunt,* 84 Ohio St. 143 (95 N. E. 666):

"Manifestly, however, each case should be decided on its peculiar facts, and involves necessarily a consideration of the legislative intent in framing the particular statute by which the position, whatever it may be, is created."

The rule is accurately stated in *State, ex rel. Barney,* v. *Hawkins, supra,* where the court said:

"After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign

power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional."

This rule is recognized by both appellants and appellees in their briefs.

In *People, ex rel. Throop,* v. *Langdon,* 40 Mich. 673, 682, Mr. Justice COOLEY said:

"The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond."

These factors, while not controlling, are of assistance in doubtful cases.

Applying the rules thus stated to the instant case, we are impressed with the fact that defendant neither had the dignity nor the discretion usually vested in one holding a public office.

We agree with the defendant in his contention that the entire chapter 17 of the penal code (Comp. Laws Supp. 1940, § 17115–117 *et seq.,* Stat. Ann. § 28.312 *et seq.*) should be examined. Section 117 provides that any person who shall corruptly give, offer or promise to any public *officer, agent, servant* or *employee* after the election or appointment of such *officer, agent, servant* or *employee,* et cetera, a bribe, shall be guilty of a felony. On the other hand, section 118 of the same chapter of the penal code (Comp. Laws Supp. 1940, § 17115–118, Stat.

Ann. § 28.313), under which defendant was indicted, definitely limits the operation of the statute to any executive, legislative or judicial officer who shall corruptly accept any gift or gratuity, et cetera. We are impressed with the fact that the legislature saw fit to use the words "agent, servant or employee" in section 117 but omitted them in section 118. It seems to have been the legislative intent as far as it can be ascertained to punish more severely any executive, legislative or judicial officer who shall accept a bribe. Section 125 of the same chapter makes it unlawful for any agent or employee to *accept* a bribe and declares it to be a misdemeanor. It is unnecessary to hold that this would grant to an assistant or agent, an alter ego of the main officers, clothed with high discretionary powers, immunity from section 118, which refers to executive, legislative or judicial officers, but we do not believe that defendant's position as an accounts examiner without any discretionary power was a public office. The legislature must have intended some distinction to exist between those included as recipients under section 117 and section 118. Because in the former the words *agent, servant* or *employee* are used, while in the latter they are omitted, we conclude that the legislature intended an even stricter interpretation of the term *public officer* than ordinarily would follow. Evidently some persons who are included under section 117 as recipients would not be included under section 118. While the case approaches the border line, under its particular facts, we cannot hold that defendant was a public officer.

The information filed shows that defendant was charged with being an accounts examiner for the Michigan sales tax division. While at the end of the information, after the signature of the prosecuting attorney, there was a note to "See Sec. 118 M.

P. C. 1931," "28.313 Ann. St.," nevertheless this constituted no part of the information and was mere surplusage.   See *People* v. *Murn*, 220 Mich. 555. Defendant should have been proceeded against and, if found guilty, sentenced under section 125 of the Michigan penal code (Comp. Laws Supp. 1940, § 17115–125, Stat. Ann. § 28.320).   As the case must go back for new trial, we need not discuss the other errors claimed by defendant.

The judgment of conviction is reversed and the case remanded for a new trial under the information as filed but with reference to the proper statute.

North, C. J., and Starr, Wiest, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.