PEOPLE v COUTU

PEOPLE v CARLIN

Docket Nos. 110652, 110727, 110728. Argued November 9, 1998 (Calendar
Nos. 3-4). Decided March 9, 1999.

James Coutu, Sr., Arthur Kinney, Gerald Reeves, and Hollie Spear,
Oakland County Sheriff's deputies, were charged in the 51st Dis-
trict Court, Robert W. Carr, J., with misconduct in office and con-
spiracy to commit misconduct in office with respect to their duties
at the Oakland County jail. The court dismissed the charges. The
Oakland Circuit Court, Alice L. Gilbert, J., affirmed. The Court of
Appeals, HOOD, P.J., and McDONALD and YOUNG, JJ., affirmed in an
unpublished opinion per curiam, holding that the deputies held no
public office, were mere employees, and thus were not capable of
engaging in the crime of misconduct in office (Docket No. 188417).
The people appeal.

Gerard L. Carlin, a captain with the Oakland County Sheriff's Depart-
ment and commander of its Rochester Hills substation, was
charged with six counts of misconduct in office. The 52-3 District
Court, Ralph H. Nelson, J., bound him over on five counts. The
Oakland Circuit Court, Deborah G. Tyner, J., concluded that he was
not a public official and dismissed the remaining counts. In a sepa-
rate indictment, he was charged with fourteen counts of miscon-
duct in office. The district court, Ralph H. Nelson, J., dismissed all
fourteen counts, concluding that he was not a public official and
that no malfeasance, misfeasance, or corrupt intent was involved.
The circuit court, Deborah G. Tyner, J., affirmed. The Court of
Appeals, WAHLS and GAGE, JJ. (MICHAEL J. KELLY, P.J., dissenting in
part), affirmed, concluding that an Oakland County deputy sheriff
is a public employee, not a public official, and that the circuit and
district courts did not abuse their discretion by dismissing the
charges. 225 Mich App 480 (1997) (Docket Nos. 186263, 190563).
The people appeal.

In an opinion by Justice KELLY, joined by Chief Justice WEAVER,
and Justices BRICKLEY, CAVANAGH, TAYLOR, and CORRIGAN, the Supreme
Court held:

Deputy sheriffs are public officials for purposes of misconduct in office charges when allegations supporting the charges arose from the performance of their duties.

1. A deputy sheriff is a public official for purposes of the common-law offense of misconduct in office. The Legislature provided for the creation of deputy sheriffs as law enforcement personnel. Deputy sheriffs exercise sovereign power while engaged in the discretionary discharge of their duties; their powers and duties are defined by statute; and, while they do not perform their duties independently or without the control of a superior power other than the law, the Legislature authorized their appointment under the control of the sheriff. Deputy sheriff positions generally involve permanent employment. Deputies are required to take an oath before entering upon their duties of office.

2. The defendants in *Coutu* are public officials for purposes of the misconduct in office charges because the charges arose from the performance of their duties with the Oakland County Sheriff's Department work-release facility. Defendant Carlin is a public official for purposes of his misconduct in office charges because the charges arose from the performance of his command duties at the Rochester Hills substation.

Reversed and remanded.

Justice YOUNG took no part in the decision of this case.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people in *Coutu*.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people in *Carlin*.

*Arthur Jay Weiss* for defendant-appellee Coutu.

*Fieger, Fieger & Schwartz, P.C.* (by *Michael Alan Schwartz*), for defendant-appellee Reeves.

*Darrell L. Cho* and *Thomas Kizer, Jr.,* for defendant-appellee Carlin.

KELLY, J. We granted leave in these cases to determine whether deputy sheriffs are "public officials" for purposes of the common-law offense of misconduct in office. We find that deputy sheriffs are public officials for purposes of these charges when the allegations supporting them arise from the performance of their duties.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### *PEOPLE v COUTU*

Defendants, deputy sheriffs with the Oakland County Sheriff's Department, were charged with multiple counts[1] of misconduct in office and conspiracy to commit misconduct in office. The charges were based on allegations that they afforded work-release inmates preferential treatment in exchange for gifts and favors.

Captain Gerald Reeves was responsible for controlling Oakland County Sheriff's Department prisoners placed outside the main jail facility, including those assigned to the work-release facility. Although Reeves was responsible for its overall functioning, Sergeant James Coutu was responsible for the facility's day-to-day operations. Deputies Arthur Kinney and Hollie

---

[1] Specifically, the prosecution charged defendant: (1) Reeves with one count of misconduct, (2) Coutu with seven counts of misconduct, (3) Spear with four counts of misconduct, and (4) Kinney with two counts of misconduct. All were charged with one count of conspiracy.

Spear were comparatively new employees of the facility.

Inmates of the Oakland County work-release facility were permitted to leave the facility for employment for no more than ten hours a day, six days a week. As a condition of the program, inmates paid rent based on a percentage of their income. The facility also housed trustees, who were inmates with responsibilities inside the facility. However, trustees were not required to pay rent or permitted to leave the facility.

Notwithstanding these conditions, defendants allegedly misrecorded work-release hours, allowing inmates to work additional hours, stay out overnight, and travel out-of-state. Defendants also allegedly permitted certain trustees to leave the facility. In some instances, defendants allegedly drafted letters on official letterhead requesting judges to provide favored inmates with early release or work-release status. In exchange, defendants allegedly accepted gifts and favors from inmates. They included money, alcohol, mountain bikes, concert tickets, basketball tickets, cartons of orange juice, extensive home remodeling, automobile repairs, shrink wrapping service, a "no cost" mortgage, and employment for relatives.

At the conclusion of defendants' preliminary examination, the trial court concluded that the prosecution had failed to establish the element of "quid pro quo" linking the inmates' gifts to defendants' favors. After the district court dismissed the charges against defendants, the circuit court affirmed its ruling. The Court of Appeals affirmed on different grounds. It concluded that the defendant deputy sheriffs held no

public office, but were mere employees,[2] and, as such, were not capable of engaging in the crime of misconduct in office. It declined to address the remainder of the prosecution's arguments associated with its appeal.

### *PEOPLE v CARLIN*

Defendant, a captain with the Oakland County Sheriff's Department and commander of its Rochester Hills substation, was charged with six counts of misconduct in office. The charges were based on allegations that he misrepresented overtime hours in order to ingratiate himself with Rochester Hills city officials. Although the district court bound over defendant on five counts, the circuit court concluded that defendant was not a public official and dismissed the remaining counts.

In a separate indictment, defendant was charged with fourteen counts of misconduct in office on the basis of allegations that he ordered deputies to chauffeur prominent Oakland County officials to various locations. However, the district court dismissed all fourteen counts, concluding that defendant was not a public official and there was no malfeasance, misfeasance, or corrupt intent.

Affirming, a divided panel of the Court of Appeals concluded that an Oakland County deputy sheriff is a public employee, not a public official. 225 Mich App 480, 485; 571 NW2d 742 (1997). The majority found the dissent's distinction between a "public officer" and "public official" inapposite because the issue was

---

[2] Citing *Schultz v Oakland Co*, 187 Mich App 96, 99-101; 466 NW2d 374 (1991).

whether defendant held a public office. *Id.* at 488.
Therefore, the majority concluded that the circuit and
district courts did not abuse their discretion by dis-
missing the misconduct in office charges. *Id.* at 489.
After finding that defendant was not a public official,
the Court dismissed as moot the remainder of the
prosecution's arguments. *Id.*

Dissenting, Judge KELLY explained that the district
and circuit courts erred by concluding that defendant
was not a public officer. *Id.* at 492. Concluding that
the terms "public officer" and "public official" were
not interchangeable, he reasoned that deputy sheriffs,
"being akin to ordinary foot soldiers, are officers who
are public employees but not public 'officials.' " *Id.* at
493-494. Judge KELLY concluded that *Schultz v Oak-
land Co*, 187 Mich App 96; 466 NW2d 374 (1991), did
not extend to defendant because he was a command
officer "described by [the] Sheriff . . . as the *de facto*
police chief of Rochester Hills." 225 Mich App 494.

## II. ANALYSIS

We agree with the Court of Appeals that a determi-
nation whether defendant is a public officer is a ques-
tion of law that is reviewed de novo. *Id.* at 484. In
addition, interpretation and application of statutes is
a question of law, also reviewed de novo. *People v
Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

Defendants were charged with the common-law
offense of misconduct in office pursuant to the fol-
lowing statutory catchall provision:

> Any person who shall commit any indictable offense at
> the common law, for the punishment of which no provision

is expressly made by any statute of this state, shall be guilty of a felony . . . .[3] [MCL 750.505; MSA 28.773.]

At common law, misconduct in office constituted "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." Perkins & Boyce, Criminal Law (3d ed), p 543. A public officer was distinguished from an employee " 'in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond.' " *People v Freedland*, 308 Mich 449, 458; 14 NW2d 62 (1944) (citation omitted).

To determine whether a position constituted public office, this Court has examined the following five indispensable elements:

(1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. [*Id.* at 457-458 (citation omitted).]

---

[3] We have previously recognized that a police officer charged with obstruction of justice for filing a false police report could be charged pursuant to MCL 750.505; MSA 28.773. *People v Thomas*, 438 Mich 448, 458, n 8; 475 NW2d 288 (1991). Amplifying this point in her concurrence, Justice Boyle specifically stated that such conduct constituted misconduct in office. *Id.* at 459, n 2, 460-461.

Oath and bond requirements are also of assistance in determining whether a position is a public office. *Id.* at 458.

Examination of these elements supports the conclusion that a deputy sheriff is a public official for purposes of the common-law offense of misconduct in office. First, the Legislature provided for the creation of deputy sheriffs at MCL 51.70; MSA 5.863.[4] Second, as law enforcement personnel, deputy sheriffs exercise sovereign power while engaged in the discretionary discharge of their duties. *Tzatzken v Detroit,* 226 Mich 603, 608; 198 NW 214 (1924). Third, the Legislature defined in part the powers and duties of deputy sheriffs. See MCL 51.75; MSA 5.868,[5] MCL 51.76(2); MSA 5.868(16)(2), MCL 51.221; MSA 5.881.

Regarding the fourth element, we recognize that deputy sheriffs do not perform their duties independently or without the control of a superior power "other than the law." *Freedland, supra* at 458. However, this element also encompasses inferior or subordinate offices authorized by the Legislature that have been placed under the control of such a superior office. *Id.* Because the Legislature has authorized the appointment of deputy sheriffs, an inferior or subordinate office to that of sheriff, we conclude that this element is satisfied. MCL 51.70; MSA 5.863. Fifth,

---

[4] MCL 51.70; MSA 5.863 states:

Each sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time.

[5] MCL 51.75; MSA 5.868 states:

The sheriff shall have the charge and custody of the jails of his county, and of the prisoners in the same; and shall keep them himself, or by his deputy or jailer.

deputy sheriffs are generally positions of permanent employment. Finally, deputy sheriffs are required to take an oath before entering upon their duties of office. MCL 51.73; MSA 5.866.

Consistent with this analysis, other Michigan courts have recognized that law enforcement personnel are public officers for purposes of wilful neglect charges pursuant to MCL 750.478; MSA 28.746.[6] *People v Medlyn*, 215 Mich App 338, 341; 544 NW2d 759 (1996) (deputy sheriff); *People v Bommarito*, 33 Mich App 385, 389; 190 NW2d 359 (1971) (undersheriff). In addition, we have specifically recognized that police officers are public officers for purposes of tort immunity. *Tzatzken, supra* at 608.

However, we acknowledge that other courts have rejected the proposition that law enforcement personnel are public officers. In *Schultz*,[7] a deputy sheriff was deemed "a public employee rather than a public official" for purposes of determining an effective date of resignation and entitlement to employee benefits. In *Burnett v Moore*,[8] an off-duty state trooper was not a state official for purposes of court of claims jurisdiction. Finally, in *Solomon v Highland Park Civil Service Comm*,[9] a police officer was not a public officer for purposes of determining whether he was

---

[6] MCL 750.478; MSA 28.746 provides:

> When any duty is or shall be enjoined by law upon any *public officer*, . . . every wilful neglect to perform such duty, where no special provision shall have been made for the punishment of such delinquency, shall be deemed a misdemeanor . . . . [Emphasis added.]

[7] 187 Mich App 98, 100-102.

[8] 111 Mich App 646, 648-650; 314 NW2d 458 (1981).

[9] 64 Mich App 433, 437-438; 236 NW2d 94 (1975).

obligated to mitigate damages related to his wrongful discharge claim.

Although these authorities appear incongruous, their holdings are harmonized by referring to the legal context in which the public official determination arises. Addressing economic issues, courts have consistently concluded that law enforcement personnel are not public officials.[10] See *Schultz, supra* at 101-102 (resignation, benefits); *Burnett, supra* at 648-649 (off-duty assault and battery); *Solomon, supra* at 436-437 (mitigation). Meanwhile, addressing the relationship between law enforcement personnel and the discharge of their duties, courts have consistently concluded they are public officials. See *Tzatzken, supra* at 608 (tort immunity); *Medlyn, supra* at 341 (wilful neglect); *Bommarito, supra* at 389 (wilful neglect).

We find that the determination whether a deputy sheriff is a public official is dependent upon the legal context in which it arises.[11] Therefore, a deputy sher-

---

[10] Although some authorities appear inconsistent with this proposition, they are readily distinguishable. See *Blynn v City of Pontiac,* 185 Mich 35, 42-43; 151 NW 681 (1915), and *Parker v West Bloomfield Twp,* 60 Mich App 583; 231 NW2d 424 (1975). For instance, in *Blynn* and *Parker,* police officers and employees were distinguished on the basis of a city charter and an ordinance. *Blynn, supra* at 44; *Parker, supra* at 597.

[11] We have previously recognized that a determination whether an individual is a public official is dependent upon the legal context in which it arises:

[A] State officer is one who exercises a portion of the sovereign powers on a State-wide basis, normally from the seat of government . . . while in another, a State officer is any official whatsoever whose duties embrace the implementation of sovereign policy, however expressed, such as the village constable. From such dichotomy we derive no comfort, however, for it is equally clear that the term "State officer" will vary in content with its use and *context,* and that the same officeholder may be an officer of the State for one purpose and not for another. [*Schobert v Inter-Co Drainage Bd,* 342 Mich 270, 281-282; 69 NW2d 814 (1955) (citations omitted) (emphasis added).]

iff is a public official for purposes of misconduct in office charges when the allegations supporting the charges arise from the performance of that deputy's official duties.[12]

This conclusion is consistent with that made in other jurisdictions. In *State v Bridgers*,[13] a highway patrol officer was considered a public official for purposes of satisfying a statute making it unlawful to threaten public officials with bodily harm. In *State v Hess*,[14] a police chief was considered a public official for purposes of misconduct in office charges for accepting money in exchange for revealing police information to organized crime members. In *State v Lombardo*,[15] an undersheriff was considered a public official for purposes of misconduct in office charges that he allowed prisoners to leave jail confines in exchange for money.

Therefore, we find that deputy sheriffs are public officials for purposes of misconduct in office charges when allegations supporting the charges arose from the performance of their duties.

### III. CONCLUSION

#### *PEOPLE v COUTU*

We conclude that defendants are public officials for purposes of their misconduct in office charges because the charges arose from the performance of

---

See also *Solomon, supra* at 439-440 (CAVANAGH, J., concurring).

[12] Contrary to the Court of Appeals dissent in *Carlin*, we find no distinction between the terms "public officer" and "public official." See *Carlin, supra* at 493-494. Rather, we are persuaded that the distinction between command and non-command duties relates to the level of discretion an officer possesses in exercising sovereign power.

[13] 329 SC 11, 13-15; 495 SE2d 197 (1997).

[14] 279 SC 14, 17, 20-21; 301 SE2d 547 (1983).

[15] 18 NJ Super 511, 518-520; 87 A2d 375 (1952).

their duties with the Oakland County Sheriff's Department work-release facility. Accordingly, we reverse the decision of the Court of Appeals and remand to it for consideration of the remainder of the prosecution's arguments associated with its appeal.

### PEOPLE v CARLIN

We conclude that defendant Carlin is a public official for purposes of his misconduct in office charges because his charges arose from the performance of his command duties at the Rochester Hills substation. Accordingly, we reverse the decision of the Court of Appeals and remand to it for consideration of the remainder of the prosecution's arguments.

WEAVER, C.J., and BRICKLEY, CAVANAGH, TAYLOR, and CORRIGAN, JJ., concurred with KELLY, J.

YOUNG, J., took no part in the decision of this case.