# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERENCE MITCHELL BRUCE,

        Defendant-Appellant.

UNPUBLISHED
October 5, 2017

No. 331232
Jackson Circuit Court
LC No. 15-004687-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STANLEY LYLE NICHOLSON,

        Defendant-Appellant.

No. 331233
Jackson Circuit Court
LC No. 15-004688-FH

---

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendants, Terence Bruce and Stanley Nicholson, appeal as of right their jury trial convictions of the common law offense of misconduct in office.[1] Defendants were acquitted of larceny from a building, MCL 750.360. The trial court sentenced both defendants to serve one year of probation and perform 40 hours of community service. We vacate both defendants' convictions.

---

[1] MCL 750.505 provides that, "[a]ny person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court."

Defendants were federal border patrol agents assigned to the "Hometown Security Team" (HST), a task force comprised of members of the Michigan State Police, motor carrier officers, and federal border patrol agents. Members of the HST, including defendants, assisted the Jackson Narcotics Enforcement Team in executing a search warrant on two residences tied to a marijuana growing operation. The renter of the residences discovered that several items with no evidentiary value were missing after the search, including a stool and an antique thermometer that he considered a family heirloom.

HST team leader Steven Temelko received information that defendant Bruce took an item from one of the homes during the execution of the search warrant and questioned him about the matter. Defendant Bruce admitted to taking a stool from one of the homes, and Temelko ordered him to return it. When Temelko asked why he took the stool, defendant Bruce allegedly attributed the decision to "stupidity." He later returned the stool.

Defendant Nicholson testified that his role in executing the search warrant was to secure a perimeter, and he entered the garage to talk with other officers present there. He asserted that Michigan State Police Trooper Craig Ziecina entered the garage and handed him a thermometer, telling him that he should fix it up because he had heard that defendant Nicholson was a "tinkerer" of sorts. Defendant Nicholson asserted that he thought the thermometer was "trash" because it had a foggy lens and a frame that appeared rusted and weathered. He added that this exchange took place in front of several other officers, and that Michigan State Police Trooper Jeffrey Schrieber indicated that everything in the home without evidentiary value would be thrown away.[2] Defendant Nicholson asserted that he "scanned the group" of officers present but none objected to him taking the item. He later discarded the thermometer after he inadvertently broke it while trying to refurbish it. According to defendant Nicholson, he did not realize that the thermometer was not trash until a detective contacted him to investigate the matter.

Defendants were charged with misconduct in office, a common law offense, and larceny in a building, a felony. Both moved to dismiss the misconduct in office charges against them, arguing that their employment as border patrol agents did not fall within the definition of employment in a "public office" as defined for purposes of the crime of misconduct in office. The trial court disagreed and denied their motion to dismiss and later denied their motion for a directed verdict at trial. Defendants were convicted and sentenced as set forth above.

On appeal, defendants argue that the trial court abused its discretion by denying their motions to dismiss and erred by denying their motions for a directed verdict because they are not public officers that could be charged with misconduct in office.[3] We agree.

---

[2] Schrieber denied stating that any items not seized would be thrown away and denied seeing Ziecina hand any object to defendant Nicholson.

[3] Defendant Nicholson's argument is based upon the motion to dismiss and defendant Bruce's argument is based upon the motion for directed verdict. However, because defendants joined in each other's motions in the trial court and the analysis and reasoning will apply to both equally, we treat each of these arguments raised on appeal as applying to both defendants.

The question of whether a defendant is a public officer is a question of law reviewed de novo. *People v Coutu*, 459 Mich 348, 353; 589 NW2d 458 (1999). A court's ruling on a motion to dismiss is reviewed for an abuse of discretion. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

We review de novo a trial court's denial of a motion for a directed verdict. *Abke v Vandenberg*, 239 Mich App 359, 361; 608 NW2d 73 (2000). "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

MCL 750.505 provides that, "[a]ny person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court." When the Legislature codifies a common-law crime without articulating its elements, we must look to the common law for the definition of the crime and, until the Legislature modifies the common law definition, we are bound by it. *People v Perkins*, 468 Mich 448, 455; 662 NW2d 727 (2003).

At common law, misconduct in office was defined as "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." *Coutu*, 459 Mich at 354, quoting Perkins & Boyce, Criminal Law (3d ed), p 543. A public officer could be convicted of misconduct in office "(1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance." *Perkins*, 468 Mich at 456. The specific elements of the offense of misconduct in office, i.e., what the prosecutor must prove with respect to the defendant in order to convict of the charge of misconduct in office, are as follows: (1) defendant is a public officer, (2) the misconduct occurred in the exercise of the duties of the office or under the color of the office, and (3) is corrupt behavior. *People v Milton*, 257 Mich App 467, 471; 668 NW2d 387 (2003). Here, the very first element, whether defendants are public officers, is at issue.

In *Coutu*, 459 Mich at 354, our Supreme Court identified five elements necessary for an individual's position to qualify as a public officer:

> (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power other than the law, unless they be those of an

inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. [Id. (citation and quotation marks omitted).]

The existence of "[o]ath and bond requirements" may also assist in making this determination. *Id.* at 355.

The word "the" is a definite article, and "Constitution" and "legislature" are both singular nouns. Because "the" appears before these singular nouns, it is clear that the phrase "created by the Constitution or by the legislature" contemplated *one* Constitution and *one* legislature. And, because the phrase was drafted by the Michigan Supreme Court, applying Michigan law, reason dictates that "the" Constitution and "the" legislature contemplated were those of Michigan. This interpretation is consistent with our general interpretation of definite articles and nouns as they appear in statutes. See, e.g., *Robinson v City of Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000)("[R]ecognizing that 'the' is a definite article, and 'cause' is a singular noun, it is clear that the phrase 'the proximate cause' contemplates one cause."). Moreover, Michigan case law refers to this state's lawmaking branch of government as the Legislature while referring to the nation's lawmaking branch as Congress. See e.g., *Taxpayers of Mich Against Casinos v State*, 471 Mich 306, 332; 685 NW2d 221 (2004), cert den 543 US 1146; 125 S Ct 1298; 161 L Ed 2d 106 (2005); *Moorman v Moorman*, 340 Mich 636, 643; 66 NW2d 248 (1954); *Mich Dep't of Civil Rights ex rel Jones v Mich Dep't of Civil Serv*, 101 Mich App 295, 307; 301 NW2d 12 (1980). Thus, the words "legislature" and "Congress" are not synonymous.

Because the position of federal border patrol agent was not created by the Michigan Constitution or by the Legislature, it must have been "created by a municipality or other body through authority conferred by the legislature" in order for defendants to qualify as public officers. It was not; it is uncontested that this position was created by Congress. While MCL 764.15d allows federal law enforcement officers to enforce state law "to the same extent as a state or local officer" if certain conditions are met, the fact that defendants were temporarily enforcing Michigan law bears no relation to how their positions were *created*.

The *Coutu* Court described the elements as the "five indispensable elements" (*Id*. at 354) and plaintiff has failed to establish that defendants' position meets even the first element. Thus, the trial court abused its discretion by denying defendants' motion to dismiss and further erred in failing to grant defendants' motions for a directed verdict on the charge of misconduct in office. Defendants' convictions of misconduct in office must be vacated. This being true, we need not consider defendants' remaining arguments on appeal.

We vacate both defendants' convictions.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray

-4-