*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HAROLD MANUEL ROCHON,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2020

No. 345850
Wayne County Circuit Court
LC No. 17-008933-01-FH

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant, Harold Manuel Rochon, appeals as of right his jury trial conviction of misconduct in office, MCL 750.505. The trial court sentenced defendant to 18 months' probation, with the first 60 days to be served in jail, and 200 hours of community service. Because the trial court did not abuse its discretion in allowing the information to be amended, and because there was sufficient evidence to convict defendant of misconduct in office, we affirm.

In 2015, defendant, a now-retired Captain of the Detroit Police Department's (DPD) 2nd Precinct, ordered two of his subordinate officers, Officers Alexander Collrin (Collrin) and Timothy Sumpter (Sumpter), to power wash and stain a deck at his personal property. The officers were ordered to perform the work with the understanding that defendant would not personally pay them for their services, but instead they would be paid from DPD funds. Despite their not wanting to perform the work, Collrin and Sumpter performed the ordered work on two dates during the summer of 2015. In March of 2016, an Internal Affairs investigation at the DPD occurred, during which evidence of the officers' non-police services performed at defendant's home was uncovered. Defendant was thereafter charged with misconduct in office and the matter proceeded to a jury trial. During the trial, the prosecutor moved to amend the information and the trial court allowed the amendment. Defendant was ultimately found guilty of the charged offense at the conclusion of the trial. This appeal followed.

We review a trial court's decision to amend an information for an abuse of discretion. *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). A trial court abuses its

discretion when its decision falls outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

This Court reviews a claim of insufficient evidence de novo on appeal. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). In conducting such a review, we review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* We also review constitutional issues de novo on appeal. *People v Houstina*, 216 Mich App 70, 73; 549 NW2d 11 (1996).

On appeal, defendant first asserts that the trial court abused its discretion in allowing the prosecution to amend the information. He raises several issues with respect to the amendment, none of which have merit.

Pursuant to MCL 767.45(1), an indictment or information must contain, among other things, the nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged and the time of the offense "as near as may be." No variance as to the time of the charged offense is fatal, "unless time is of the essence of the offense." MCL 767.45(1)(b).

Relevant to this appeal, a trial court may amend the information at essentially any time under proper circumstances. *People v Goecke*, 457 Mich 442, 459-460; 579 NW2d 868 (1998). Further, a trial court may permit the prosecutor to amend the information at any time before, during, or after trial to correct a variance between the information and the proofs so long as the defendant is not unfairly surprised or prejudiced by the amendment. MCR 6.112(H). MCL 767.76 also provides, in part:

> The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury.

An amendment of the date of an offense is proper, as long as the amended information does not introduce a new or different charge, *People v Lee*, 307 Mich 743, 748-749; 12 NW2d 418 (1943), and as long the accused is not prejudiced by the amendment. *People v Higuera*, 244 Mich App 429, 444; 625 NW2d 444 (2001).

A defendant is prejudiced by an amendment to the information when the amendment causes unfair surprise, inadequate notice, or an insufficient opportunity to defend. *McGee*, 258 Mich App at 688. Where a defendant is aware of the possibility of a proposed amendment prior to trial, even if the notice is provided on the very day trial begins, and defense counsel is unable to show he was

denied the opportunity to cross-examine witnesses regarding the change, the defendant cannot establish he was unfairly surprised. *People v Perry*, 317 Mich App 589, 594-595; 895 NW2d 216 (2016). And where the original information is sufficient to inform a defendant of the nature of the charge against him, a defendant is not prejudiced by an amendment to cure a defect in the information, nor is he deprived of the right to a preliminary examination on the amended information. See, e.g., *People v Weathersby*, 204 Mich App 98, 104; 514 NW2d 493 (1994), reversed on other grounds by *People v Stevens*, 498 Mich App 162; 869 NW2d 233 (2015).

Defendant was charged in the original information with one count of misconduct in office for the "misappropriation of on-duty Detroit Police Department staff at his private residence for personal gain contrary to MCL 750.505." On the original information under "Date of Offense," the dates "7/24/15 & 8/25/15" appear. However, during trial, the prosecutor moved to amend the information to read, in the "Date of Offense" portion of the amended information, "ON OR ABOUT 7/24/15-8/25/15." Of significant import, the single charge of misconduct in office remained, verbatim, the same in both the original and amended information.

The minor change to the information occurred because it was discovered during the pendency of the case that, while the police officers may have received some sort of credit or renumeration from the DPD on either July 23 or July 24, 2015, the actual physical work may have been performed on July 23, 2015.[1] By all accounts, defendant was the one who first discovered that the services could not have taken place on July 24, 2015, because court records reflected that both officers were testifying in court for nearly all of that day. It was only after counsel advised the prosecution of this information that amendment of the information was sought. On the first day of trial the parties discussed a proposed amendment to the information, with defense counsel stating his understanding that the prosecution "is seeking to slightly amend the information . . . to include language of on or about or something to that effect."

However, while the actual motion to amend the information was not pursued until the first day of trial, defendant clearly knew prior to trial that the July 24, 2015 date appearing on the original information may have been in error. At the preliminary examination in this matter, the prosecutor asked Officer Collrin, "[a]nd on *approximately* July 24, 2015 were you ordered to report to [defendant's house]?" (emphasis added). The prosecutor similarly asked Officer Sumpter, "[w]as there a time when you were informed that you were going to be put on the administrative hours and sent to [defendant's house]," and "[a]nd was that *approximately* July 24[], 2015?" (emphasis added). Given that the officers generally testified at the preliminary examination that the dates of service were approximate, and defendant was the one who discovered that the officers could not have been at defendant's house on the July 24, 2015 date contained in the original information, defendant cannot claim he was surprised by the amendment to the information to account for the one-day discrepancy, let alone that he was unfairly surprised. It would not be unreasonable to expect that the prosecution would seek to amend the information in conformance with the newly discovered evidence at some point. In fact, the prosecution, in its April 30, 2018 reply to defendant's motion for recusal, specifically stated that "[a]fter review, the

---

[1] There is no allegation of error in the information with respect to the second date services had allegedly been performed on defendant's property on August 25, 2015.

-3-

People now believe the conduct at issue occurred before July 24th, most likely on July 23rd, 2015." Thus, as of April 30, 2018, nearly a month before trial, defendant was on notice that the conduct at issue may have been "on or about" July 24, 2015, rather than on that precise date.

Defendant also was not prejudiced by the amendment to the information. Both officers testified consistently in their Garrity[2] statements, at the preliminary examination, and at trial that they power washed and stained the deck at defendant's house on two dates in the summer of 2015, and that they did not want to do the work but were told they would be compensated for their work by the DPD. These factual allegations, which formed the basis for the charge against defendant, remained the same regardless of what precise dates in the summer of 2015 the actual work was performed. Moreover, it is apparent from the record that defense counsel tailored his witness questioning to address the specific alleged date the services occurred, thereby defeating defendant's argument that the amendment provided insufficient opportunity for him to defend. Indeed, defense counsel doggedly pursued the fact that the work could not have been performed on July 24, 2015, making it the cornerstone of the defense. For example, defense stated to the jury on the first day of trial in his opening statement that "there's not a shred of a document or testimony or anything else ever in this case that says anything about the 23rd. Nothing. That's brand new." Defense counsel also spent a significant amount of its time during trial focusing on DPD timesheets and other documents for the two officers concerning July 23 and 24, 2015 work hours. Thus, defendant was not unfairly surprised or prejudiced by the amendment to the information.

In addition, as previously indicated, no variance as to the time of the charged offense is fatal, "unless time is of the essence of the offense," MCL 767.45(1)(b), and defendant has not established that "time is of the essence" for the specific charge of misconduct in office by "misappropriation of on-duty Detroit Police Department staff at his private residence for personal gain."

The statute under which defendant was charged, MCL 750.505 provides, "[a]ny person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony . . . ." Misconduct in office was an indictable offense at common law, *People v Waterstone*, 296 Mich App 121, 133; 818 NW2d 432 (2012), and was defined at common law as:

> "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999) . . . quoting Perkins & Boyce, Criminal Law (3d ed.), p. 543. An officer could be convicted of misconduct in office (1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance. Perkins, p. 540. [*Waterstone*, 296 Mich App at 133].

---

[2] A Garrity statement is an oral or written report obtained from a public employee concerning allegations against public employees.

Relevant to this matter, time the date of the offense is not a stated element of misconduct in office, and thus the specific date of July 23, 2015, was not an essential element of the charged crime. To the extent the specific date was material to show whether or how the officers were compensated for their time at defendant's house in July, defense counsel thoroughly and persistently explored the details.

Defendant also contends that the amendment to the information deprived him of his statutory right to a preliminary examination on the charge. However, as indicated above, the charge against defendant remained exactly the same. The information thus informed defendant of the nature of the offense charged at "[t]he time of the offense as near as may be." MCL 767.45(1). *People v Miller*, 326 Mich App 719, 732; 929 NW2d 821 (2019). As stated in *Weathersby*, 204 Mich App at 104, "[b]ecause no new offense was charged, defendant's right to receive a preliminary examination on the new indictment was not violated."

Defendant's last argument with respect to the amendment of the information is that the amendment to the information resulted in a violation of his due process rights. A criminal defendant's right to adequate notice of the charges against him stems from U.S. Const., Am. V and Const. 1963, art. 1, § 17. *McGee*, 258 Mich App at 699. The right encompasses a right to respond to the charges against him, so to establish a due process violation, a defendant must prove prejudice to his defense. *Id*. at 700.

As previously stated, the slight change of adding "ON OR ABOUT" to the date of the offense on the information in no way prevented defendant from knowing or preparing for the charge against him – both the original and amended information charge defendant with the *exact same* crime concerning the *exact same* officers under the *exact same* circumstances. Defendant's assertion that the defense "would have been different had counsel been given additional time to prepare" makes no logical sense. The underlying facts remained the same, as did the elements of proof. The trial court thus did not abuse its discretion in allowing an amendment to the information.

Defendant next argues that there was insufficient evidence to convict him of the charged crime. We disagree.

The offense of misconduct in office contains three elements: (1) defendant is a public officer, (2) the misconduct occurred in the exercise of the duties of the office or under color of the office, and (3) the misconduct is "corrupt behavior." *People v Milton*, 257 Mich App 467, 471; 668 NW2d 387 (2003). Misconduct in office can be shown by (1) commission of a wrongful act, (2) commission of a "lawful act in a wrongful manner," or (3) "fail[ure] to do an act required by the duties of the office." *Id*. The term corruption means a "sense of depravity, perversion or taint." *People v Coutu*, 235 Mich App 695, 706; 599 NW2d 556 (1999), quoting Perkins & Boyce, Criminal Law (3d ed.), p. 542. "A corrupt intent can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer," and if the acts alleged "demonstrate a tainted or perverse use of the powers and privileges granted" an officer, the allegations are sufficient to sustain a charge of misconduct in office. *Id*. at 707.

With respect to the first element, it is not controverted that defendant is a public officer. Defendant was a captain in the 2nd Precinct of the DPD and the alleged misconduct occurred implicating defendant's status as a captain.

The second element, that the misconduct occurred in the exercise of the duties of the office or under the color of the office, has been established based on the record. Specifically, defendant was the Captain in charge of the 2nd Precinct, including Officer Collrin and Sumpter, at the time the officers power washed and stained his deck. Officer Collrin testified that, in the summer of 2015, defendant *ordered* him and Officer Sumpter to power wash and stain the deck that was located at defendant's home. According to Collrin, defendant informed him that he would be scheduled to work during the time he performed deck services for defendant, and that he would be paid under his normal work hours while he and Officer Sumpter did the work. Both officers testified that they did not want to do the work but were repeatedly told to do it and feared retaliation by defendant if they reported him. The officers' testimony establishes that they did the work for defendant solely because defendant, in his capacity as their Captain, ordered them to do so.

The third and final element, "corrupt behavior," was also established by testimony and logical inferences that the jury was allowed to make. Officer Collrin testified that he and Sumpter went to defendant's residence only twice in their lives: once to power wash the deck in July of 2015, and once to stain it in August of 2015. Both officers testified that each day of work took approximately 8 hours. Officer Collrin testified that he initially told Internal Affairs that the officers went to defendant's house on July 24, 2015, but later learned that he had actually been testifying in court on that date. Both officers testified that they did not request to use their compensatory time (i.e., vacation or other paid time off) for July 23, 2015, and would not have used their earned time to perform personal services for defendant. They both indicated they would be surprised to find that they had been shown as using compensatory time on July 23, 2015. Both officers repeatedly and unequivocally testified that they did not want to perform the deck work, that they were repeatedly told to do so by defendant, and that they were told they would be shown at the DPD as "assigned out to staff" to allow them to receive DPD pay for the deck services. Thus, the officers' testimony establishes that they did the work not out of the "goodness of their hearts," as defense argues, but rather because defendant used his position of power as their Captain to force them to do work in exchange for being paid by the DPD, or at their surprise, by using their own compensatory time.

While the paperwork reflects certain date discrepancies, both officers testified unequivocally that they were only "assigned out to staff" in order to work on defendant's house and had never before been detailed as "assigned out to staff" in their normal capacity as officers. Regardless of the confusion with the paperwork and the lack of memory as to the specific days the work occurred, both officers were certain that they did not request compensatory time for July 23, 2015,[3] that they were "assigned out to staff" on two days during the summer of 2015 to perform

---

[3] To the extent that any documentation shows that the officers used compensatory time on July 23, 2015, the timekeeper, Officer Janel Patton, testified that she noticed discrepancies in the worksheets and daily details concerning time for both officers for July 23, 2015, and spoke to an unnamed supervisor about the discrepancies, after which she adjusted their time to show

work at defendant's house, that they did, in fact, power wash and stain defendant's deck on two dates in the summer of 2015, and that defendant never personally paid them for the work they did. Based upon their testimony alone, the jury could reasonably reject defendant's position that the officers voluntarily did the work at his home. It is, after all, the province of the jury to determine questions of fact and assess the credibility of witnesses. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Moreover, whether the officers actually were compensated through DPD is immaterial to defendant's conviction. Again, misconduct in office can be shown by the commission of a wrongful act or commission of a lawful act in a wrongful manner. *Coutu*, 235 Mich App at 706. And a corrupt intent "can be shown where there is intentional or purposeful misbehavior or wrongful conduct pertaining to the requirements and duties of office by an officer," and if the acts alleged "demonstrate a tainted or perverse use of the powers and privileges granted." *Id*. at 707. Even if the officers were not paid for their services at defendant's home out of DPD funds, they were told that they would be, and defendant clearly used his position as Captain to force his subordinate officers to perform services at his home. These facts, standing alone, would be sufficient to demonstrate a tainted use of defendant's powers in that he intentionally forced subordinate officers to perform duties outside of their hired duties as police officers, against their own wishes and with a looming fear of retaliation from defendant.

In sum, there was sufficient evidence on the record to convict defendant of the charged crime. The jury's note asking whether they had to find that "misconduct in office [occurred] on or about July 24, 2015 and on or about August 25, 2015 to reach a verdict?" dictates no contrary conclusion. First, the jury was properly instructed on the specific elements of the charged crime and there has been no allegation otherwise. Second, in using the words "on or about" before two specific dates, the jury note shows that the jury understood the acts did not necessarily occur on the two specified dates. Viewed in the light most favorable to the prosecution, there was sufficient evidence of misconduct in office to support the verdict.

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto

---

compensatory time used on that date. The jury was free to make any inference concerning the time sheet discrepancies, and who the supervisor spoken to may have been.